# Exhibit D

## PROMISSORY NOTE
(Apex Line of Credit)

**$1,000,000.00**                                                    **December 2, 2019**

FOR VALUE RECEIVED, **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Apex, Force, MAG, Mulungas, and Mid Western collectively herein "Borrower"), having an address at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 promises to pay to the order of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), at the office of Lender at 12695 Metcalf Avenue, Overland Park, Kansas 66213 or at such other place as the Lender may from time to time designate in writing, the principal sum of **ONE MILLION and 00/100THS DOLLARS ($1,000,000.00),** together with interest thereon, as follows (certain capitalized terms used herein are hereinafter defined):

1.    **Accrual of Interest; Interest Rate; Payments, Term.**

(a)    Interest shall accrue on the outstanding principal balance due under this Note from the date hereof through November 30, 2020 (the "Maturity Date") at the Interest Rate, or if applicable under the terms of this Note, the Default Rate.  Interest shall be computed on the daily unpaid principal balance outstanding hereunder.

(b)    Borrower shall pay all accrued interest commencing December 30, 2019 and continuing on the corresponding day of each month thereafter through the Maturity Date.

(c)    Repayment of the entire outstanding unpaid principal balance of this Note, together with all unpaid accrued interest shall be due and paid in full in one payment on the Maturity Date.

(d)    Borrower acknowledges that the monthly payments described above do not include any principal reduction payments and that the payment of all principal outstanding under this Note (a balloon payment) will be required on the Maturity Date.

(e)    All payments under this Note (other than payments of late charges) shall be first applied to accrued interest and the remainder to principal. Remittances in payment of any part of the indebtedness evidenced hereby other than in the required amount in immediately available funds shall not, regardless of any receipt or credit issued therefore, constitute payment until the required amount is actually received by the holder hereof in immediately available funds and shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived). Acceptance by the holder hereof of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only and shall not in any way excuse the existence of an Event of Default.

7C02327.DOCX

(f)    Interest under this Note shall be computed based on a 365/360 basis: that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under the Apex Line of Credit Loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the Loan Documents.

2.    **Revolving Line of Credit.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Apex and shall be made solely in accordance with the terms of the Loan Agreement. The unpaid principal balance owing on this Note may be evidenced by endorsement or amendments to the Note or by Lender's internal records. Lender shall have no obligation to advance funds under this Note if Borrower is in default under the terms of the Note or the other Loan Documents, Borrower ceases doing business or is insolvent, or Lender in good faith believes itself insecure.

3.    **Prepayment.** Borrower shall have the right to prepay all or any part of the principal due under this Note without premium or penalty at any time subject to the following conditions, (a) all interest due under this Note must be paid through the date of any prepayment, and (b) there will be no change in the due dates or the amount of any scheduled payment required under this Note.

4.    **Security.**

(a)    This Note is issued pursuant to a certain Business Loan Agreement between Borrower and Lender of even date herewith (the "Loan Agreement") (as the same may be amended from time to time; capitalized terms used herein not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement) and is subject to the terms thereof.

(b)    This Note is secured by the Security Agreement, the Mortgage, the Assignment of Rents, and the other Loan Documents.

(c)    As a material inducement to Lender making the Apex Line of Credit Loan, each Guarantor has executed a Guaranty for the purposes of unconditionally guaranteeing Borrower's obligations under this Note and the Loan Documents.

5.    **Certain Terms Defined.** In addition to words and terms defined elsewhere in this Note the following terms, as used in this Note, shall have the following meanings:

"Apex Line of Credit Loan" shall mean all of the indebtedness evidenced hereby from time to time, whether principal, interest or otherwise, and all sums coming due Lender under any of the Loan Documents, except the Apex Term Note, the MAG Line of Credit Note, or the Mulungas Term Note, from time to time.

"Apex Term Note shall mean the Promissory Note dated of even date herewith made by Borrower, payable to Lender or its order, in the original principal amount of $662,914.00 as the

7C02327.DOCX

same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Default Rate" shall mean a per annum interest rate equal to the Interest Rate plus five percent (5%) per annum.

"Event of Default" shall mean Borrower's failure to pay when due any payment of any sum of money required to be paid under the Note, Borrower's failure to pay any sum of money required to be paid under the Apex Term Note, the MAG Line of Credit Note, or the Mulungas Term Note, or a default of any provision of the Loan Documents and failure to cure the default within the applicable cure period, if any, provided in the Loan Documents for such default.

"Guarantor" shall mean Brad Carlson and any other person or entity who shall now or hereafter give to Lender a guaranty of any obligation of Borrower to Lender under the Loan Documents.

"Guaranty" shall mean the Guaranty Agreement of even date herewith given to Lender by the Guarantor with respect to the Apex Line of Credit Loan and all other obligations of Borrower under the Loan Documents, and any amendments thereto hereafter made.

"Interest Rate" shall mean a variable annual rate of interest equal to the greater of (i) the LIBOR Rate plus Two and 75/100th percent (2.75%) per annum adjusting monthly, without notice to the Borrower, as of the date of this Note and on the LIBOR Rate Adjustment Date or (ii) Four and 00/100th percent (4.00%) per annum.

"LIBOR Rate" shall mean a rate per annum equal to the ICE London Interbank Offered Rate in United States dollars for a thirty (30) day period as reported by Bloomberg Finance, L.P., adjusted for any reserve requirement and any subsequent costs arising from a change in government regulation. The initial LIBOR Rate applicable hereunder shall be the LIBOR Rate in effect on the first Business Day of the calendar month in which this Note is dated. The LIBOR Rate shall be adjusted on that date which is thirty (30) days following the date of this Note, and again subsequently adjusted on every thirty (30) day anniversary period occurring thereafter until all indebtedness owing under the Note is paid in full, using the LIBOR Rate in effect on the first Business Day of the calendar month in which each LIBOR Rate adjustment occurs. Notwithstanding the foregoing, in no event shall the LIBOR Rate be deemed to be less than zero. As used herein "Business Day" shall mean any day other than a Saturday, Sunday or a legal holiday in which banks are authorized or required to be closed for the conduct of commercial banking business in St. Louis, Missouri. Lender's internal records of applicable interest rates shall be determinative in the absence of manifest error. The independent index described herein is sometimes referred to as the index (the "Index"). If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.

"Loan Documents" shall mean collectively this Note, the Apex Term Note, the MAG Line of Credit Note, the Mulungas Term Note, the Loan Agreement, the Security Agreement, the Mortgage the Assignment of Rents, each Guaranty of all or part of the Apex Line of Credit Loan

7C02327.DOCX

given to Lender by the Guarantors, each other document defined as a Loan Document in the Loan Agreement, and each other instrument, agreement or document now or hereafter evidencing, securing, supporting, guaranteeing or executed in connection with the indebtedness evidenced hereby, and any amendments to any of the same hereafter made.

"MAG Line of Credit Note" shall mean the Promissory Note dated of even date herewith made by Borrower, payable to Lender or its order, in the original principal amount of $2,000,000.00 as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Mulungas Term Note" shall mean the Promissory Note dated of even date herewith made by Borrower, payable to Lender or its order, in the original principal amount of $2,832,000.00 as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Note" shall mean this Promissory Note, as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Usury Law" shall mean any law or regulation of any governmental authority having jurisdiction, limiting the amount of interest that may be paid for the loan, use or detention of money.

6. **Late Charge**. If any payment due under this Note is not received by Lender within fifteen (15) days after such payment is due, Borrower shall pay to Lender on demand a late charge in an amount equal to five percent (5.00%) of such overdue payment, to compensate Lender for some of the additional costs and expenses of processing late payments. Such fifteen (15) day period shall not be construed as in any way extending the due date of any payment. The "late charge" is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other remedy Lender may have and is in addition to any fees and charges of any agents or attorneys which Lender may employ upon the occurrence of an Event of Default, whether authorized herein or by law.

7. **Event of Default**. If an Event of Default shall occur and continue to exist then: (a) the entire unpaid principal balance of the Apex Line of Credit Loan together with all other sums payable to Lender under this Note and/or any of the other Loan Documents, including unpaid interest on the Apex Line of Credit Loan and all such sums, shall at the option of Lender become immediately due and payable without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration or any other notice or other action, all of which are hereby waived by Borrower; and (b) notwithstanding any other provision of this Note, during the period of existence of such Event of Default, interest on the Apex Line of Credit Loan shall accrue and be paid at the lesser of (i) the Default Rate, or (ii) the maximum lawful rate of interest under the applicable Usury Law. All of the rights, remedies, powers and privileges (together, "Rights") of the holder hereof provided for in this Note and in any other Loan Document are cumulative of each other and of

7C02327.DOCX

any and all other Rights at law or in equity. The resort to any Right shall not prevent the concurrent or subsequent employment of any other appropriate Right. No single or partial exercise of any Right shall exhaust it, or preclude any other or further exercise thereof, and every Right may be exercised at any time and from time to time. No failure by the holder hereof to exercise, nor delay in exercising any Right, including but not limited to the right to accelerate the maturity of this Note, shall be construed as a waiver of any Event of Default or as a waiver of the Right. Without limiting the generality of the foregoing provisions, the acceptance by the holder hereof from time to time of any payment under this Note which is past due or which is less than the payment in full of all amounts due and payable at the time of such payment, shall not (i) constitute a waiver of or impair or extinguish the right of the holder hereof to accelerate the maturity of this Note or to exercise any other Right at the time or at any subsequent time, or nullify any prior exercise of any such Right, or (ii) constitute a waiver of the requirement of punctual payment and performance or a novation in any respect. If any holder of this Note retains an attorney in connection with any Event of Default or at maturity or to collect, enforce or defend this Note or any other Loan Document in any lawsuit or in any probate, reorganization, bankruptcy, arbitration or other proceeding, then Borrower agrees to pay to each such holder, in addition to principal, interest and any other sums owing to Lender hereunder and under the other Loan Documents, all reasonable costs and expenses incurred by such holder in trying to collect this Note or in any such suit or proceeding, including, without limitation, reasonable attorneys' fees and expenses as permitted by law, investigation costs and all court costs, whether or not suit is filed hereon, whether before or after the Maturity Date, as said date may be extended by the terms hereof, or whether in connection with bankruptcy, insolvency or appeal, or whether collection is made against Borrower or any guarantor or endorser or any other person primarily or secondarily liable hereunder.

**8.      Right of Setoff.**   To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect its charge and setoff rights provided in this paragraph.

**9.      Choice of Governing Law.**   Lender and Borrower have agreed, and do agree, that this Note is to be construed and enforced in all respects in accordance with the internal laws (without regard to any conflicts of laws rules which might otherwise require reference to the laws of any other jurisdiction) of the State of Missouri, including but not limited to the Usury Laws of the State of Missouri.

**10.      Compliance with Usury Laws.**   All agreements contained in the Loan Documents are expressly limited so that in no event whatsoever, shall the amount paid or agreed to be paid by or on behalf of Borrower to Lender exceed the highest lawful rate permissible under any applicable Usury Law. If, from any circumstances whatsoever, compliance with any of the Loan Documents, at the time performance thereunder shall be due, shall exceed the Usury Law which a court of competent jurisdiction may deem applicable thereto, then, ipso facto, the

7C02327.DOCX

obligations to be fulfilled shall be reduced to the limit of such Usury Law. If from any circumstance, Lender shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between Borrower and Lender; provided, however, that there shall be no automatic reduction of such payments or obligations as to any party barred by law from availing itself in any action or proceeding of the defense of usury, or any party barred or exempted from the operation of any Usury Law, or in the event and to the extent the Apex Line of Credit Loan, because of its amount or purpose or for any other reason, is exempt from the operation of the Usury Law.

**11.    Revival of Liability.**  If any payments or proceeds received by Lender are subsequently invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid to a trustee, to Borrower, directly or as a debtor-in-possession, to a receiver, or any other person, whether directly or indirectly, under any bankruptcy law, state or federal law, common law, or equitable cause, then Borrower's obligation to make all such payments shall be revived and shall continue in full force and effect as if such payment or proceeds had never been received by Lender, but the interest deemed to have accrued on such payments or proceeds from the date the payments were originally due shall be calculated at the applicable rate until paid or an Event of Default has occurred.

**12.    Miscellaneous Provisions.**  If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby. This Note may not be changed, amended or modified except by agreement in writing signed by Borrower and Lender. Time is of the essence with respect to all of Borrower's obligations and agreements under this Note. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, but this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Section headings and captions herein are provided solely for convenience, and shall not be considered in interpreting or construing the provisions of this Note.

**13.    Successors and Assigns.**  Whenever used in this Note, the words "Borrower" and "Lender" shall be deemed to include the respective successors of Borrower and of Lender, and "Lender" shall also include any subsequent holder of this Note.  This Note shall be binding in accordance with its terms upon Borrower and its successors and assigns.  The holder of this Note may, from time to time, sell or offer to sell the loan evidenced by this Note, or interests therein, to one or more assignees or participants and is hereby authorized to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, any security for this Note and credit information on Borrower, any of its principals and any guarantor of this Note, to any such assignee or participant or prospective assignee or prospective participant, and to the extent, if any, specified in any such assignment or participation, such assignee(s) or participant(s) shall have the rights and benefits with respect to this Note and the other Loan Documents as such person(s) would have if such person(s) were Lender hereunder.

7C02327.DOCX

14.     **Business Purpose.** Borrower agrees that it will use the proceeds of this Note for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

15.     **Entire Agreement.** This Note and the other Loan Documents collectively: (a) constitute the final expression of the agreement between Borrower and Lender concerning the Apex Line of Credit Loan; (b) contain the entire agreement between Borrower and Lender respecting the matters set forth herein and in such other Loan Documents; (c) may not be contradicted by evidence of any prior or contemporaneous oral agreements or understandings between Borrower and Lender; and (d) supersede all prior agreements and understandings between Lender and Borrower respecting such matters.

16.     **Notices.** All notices required or permitted to be given hereunder shall be deemed to have been duly given: (a) three (3) days after being sent by certified United States Mail, return receipt requested, to Borrower and to Lender at their respective addresses hereinabove set forth, or to such other place or places as either party hereto may from time to time designate to the other for the purpose of receiving notices hereunder; or (b) if given in the manner provided for the giving of notices under the Loan Agreement.

17.     **Execution of Documents, Consultation with Counsel.** Borrower acknowledges and agrees that it has had an opportunity to review and consider the terms and provisions of this Note and each Loan Document, to consult with counsel of its choice, if desired, and to suggest changes to the structure and terms of this Note and the other Loan Documents.  Borrower warrants and agrees that its execution of this Note and the other Loan Documents is made voluntarily and with full knowledge of the significance and effect of the Note and the other Loan Documents.

18.     **Waiver of Jury Trial. BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. BORROWER**

7C02327.DOCX

AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

19.     **Venue.** Venue for any action arising pursuant to or to enforce any provision of this Note shall, at the election of Lender, in its sole discretion, be exclusively found in the Circuit Court of Jackson County, Missouri or the or the state courts for each county in which real property subject to any one or more of the Leases is located. Borrower hereby submits to the jurisdiction of such courts.

20.     **Statutory Notice.** The following provision is included in compliance with Missouri Revised Statutes Section 432.047: ORAL OR UNEXECUTEDAGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE NOTE OR THE LOAN AGREEMENT.   TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENT REACHED BETWEEN BORROWER AND LENDER ARE CONTAINED IN THIS NOTE, THE LOAN AGREEMENT, AND THE LOAN DOCUMENTS WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENTS OF THE AGREEMENT BETWEEN BORROWER AND LENDER, EXCEPT AS MAY BE LATER AGREED TO IN WRITING.

[Signature Page to follow]

7C02327.DOCX

IN WITNESS WHEREOF, this Promissory Note is effective the date first written above and Borrower has executed this Promissory Note as of the day and year written below.

**"BORROWER"**

**APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
Brad Carlson, Manager


**FORCE MIDWEST, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
Brad Carlson, Manager


**MAG TRUCKS, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
Brad Carlson, Manager


**MULUNGAS, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
Brad Carlson, Sole Member


**MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/18
Brad Carlson, Sole Member


**FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company

By: _____     Date: 12/2/19
Brad Carlson, Manager

7C02327.DOCX

## FIRST AMENDMENT TO PROMISSORY NOTE
### (Apex Line of Credit)

THIS FIRST AMENDMENT TO PROMISSORY NOTE (the "Amendment") is made effective as of November 30, 2020 by and between **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Apex, Force, MAG, Mulungas, and Mid Western collectively herein "Borrower"), and **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender").

### RECITALS

**A.**    On December 2, 2019 Borrower executed and delivered to Lender that certain Promissory Note (Apex Line of Credit) (the "Note") in the maximum principal amount of $1,000,000.00.    All words and phrases used in this Amendment with their initial letters capitalized shall have the meaning assigned to them in the Note unless such words and phrases are otherwise specifically defined herein.

**B.**    Borrower desires to extend the Maturity Date of the Note from November 30, 2020 to November 29, 2021.    Conditioned upon and subject to (i) Borrower and Lender executing this Amendment, (ii) Borrower and Lender executing a Third Amendment to Business Loan Agreement, and (iii) the Guarantor executing a Guarantor Acknowledgement and Consent, Lender agrees to extend the Maturity Date of the Note to November 29, 2021.

### AGREEMENT

NOW THEREFORE, in consideration of the premises, the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1.    That the first sentence of Section 1(a) of the Note be, and hereby is, amended by replacing the date "November 30, 2020" with the date "November 29, 2021" so that said first sentence reads in its entirety as follows:

7QM6179.DOCX

"Interest shall accrue on the outstanding principal balance due under this Note from the date hereof through November 29, 2021 (the "Maturity Date") at the Interest Rate or if applicable under the terms of this Note, the Default Rate."

2.      That Sections 4(a) of the Note be, and hereby is, deleted in its entirety and replaced as follows:

"(a)      This Note is issued pursuant to a certain Business Loan Agreement between Borrower and Lender dated December 2, 2019, as amended by the First Amendment to Business Loan Agreement dated February 11, 2020, the Second Amendment to Business Loan Agreement dated August 31, 2020, and as further amended by that certain Third Amendment to Business Loan Agreement dated of even date with this Amendment between Borrower and Lender (the "Loan Agreement" ) (as the same may be amended from time to time; capitalized terms used herein not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement) and is subject to the terms thereof."

3.      That Section 5 of the Note be, and hereby is, amended by deleting therefrom in its entirety the definition of the terms "Interest Rate" and "LIBOR Rate" adding the following definitions to Section 5:

""Interest Rate" shall mean a variable rate of interest equal to the greater of (i) the LIBOR Rate plus the Margin per annum adjusting monthly, without notice to the Borrower, as of the date of this Note and on the LIBOR Rate Adjustment Date or (ii) Four and 00/100th percent (4.00%) per annum."

""LIBOR Rate" shall mean a rate per annum equal to the ICE London Interbank Offered Rate in United States dollars for a thirty (30) day period as reported by Bloomberg Finance, L.P., adjusted for any reserve requirement and any subsequent costs arising from a change in government regulation.  The initial LIBOR Rate applicable hereunder shall be the LIBOR Rate in effect on the first Business Day of the calendar month in which this Note is dated.  The LIBOR Rate shall be adjusted on that date which is thirty (30) days following the date of this Note, and again subsequently adjusted on every thirty (30) day anniversary period occurring thereafter (the "LIBOR Rate Adjustment Date") until all indebtedness owing under the Note is paid in full, using the LIBOR Rate in effect on the first Business Day of the calendar month in which each LIBOR Rate adjustment occurs.  Notwithstanding the foregoing, in no event shall the LIBOR Rate be deemed to be less than zero.  As used herein "Business Day" shall mean any day other than a Saturday, Sunday or a legal holiday in which banks are authorized or required to be closed for the conduct of commercial banking business in St. Louis, Missouri.  Lender's internal records of applicable interest rates shall be determinative in

7QM6179.DOCX

the absence of manifest error. The independent index described herein is sometimes referred to as the index (the "Index"). If the Lender determines in good faith (which determination shall be conclusive, absent manifest error) that: (A) by reason of circumstances affecting the London Interbank Eurodollar market, adequate and fair means do not exist for ascertaining LIBOR; (B) LIBOR does not accurately reflect the cost to the Lender of the Loan; or (C) a Regulatory Change (as hereinafter defined) shall, in the reasonable determination of the Lender, make it unlawful or commercially unreasonable for the Lender to use LIBOR as the index for purposes of determining the Interest Rate, then: (i) LIBOR shall be replaced with an alternative or successor rate or index chosen by the Lender in its reasonable discretion; and (ii) the Margin may also be adjusted by Lender in its reasonable discretion, giving due consideration to market convention for determining rates of interest on comparable loans. "Regulatory Change" shall mean a change in any applicable law, treaty, rule, regulation or guideline, or the interpretation or administration thereof, by the administrator of the relevant benchmark or its regulatory supervisor, any governmental authority, central bank or other fiscal, monetary or other authority having jurisdiction over Lender or its lending office."

""Margin" shall mean Two and 75/100th percent (2.75%)."

4.      Upon demand by Lender, Borrower shall (i) pay to Lender a loan fee of Two Hundred Fifty and 00/100 Dollars ($250.00), which fee has been fully earned by Lender and (ii) pay to Lender all costs and expenses, including attorney's fees, incurred by Lender, in amending the Note.

5.      Except as expressly amended by the terms of this Amendment, the terms of the Note remain in full force and effect.

6.      **Waiver of Jury Trial. All of the parties to this Amendment knowingly and intentionally, irrevocably and unconditionally, waive any and all rights to a trial by jury in any litigation arising out of or concerning this Amendment or any other related loan documents or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.**

7.      Statutory Notice. **The following provision is included in compliance with Missouri Revised Statutes Section 432.047: ORAL OR UNEXECUTED AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY**

7QM6179.DOCX

RELATED TO THIS AMENDMENT, THE NOTE OR THE LOAN AGREEMENT. TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENT REACHED BETWEEN BORROWER AND LENDER ARE CONTAINED IN THIS AMENDMENT THE NOTE, THE LOAN AGREEMENT, AND THE LOAN DOCUMENTS WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENTS OF THE AGREEMENT BETWEEN BORROWER AND LENDER, EXCEPT AS MAY BE LATER AGREED TO IN WRITING.

[Signature page to follow]

7QM6179.DOCX

IN WITNESS WHEREOF, Borrower and Lender have duly executed this First Amendment to Promissory Note as of the day and year written below.

**"BORROWER"**

**MAG TRUCKS, LLC,** a Missouri limited liability company

By: _____          Date: 12|11|20
     Brad Carlson, Manager

**FORCE MIDWEST, LLC,** a Missouri limited liability company

By: _____          Date: 12|11|20
     Brad Carlson, Manager

**APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company

By: _____          Date: 12|11|20
     Brad Carlson, Manager

**MULUNGAS, LLC,** a Missouri limited liability company

By: _____          Date: 12|11|20
     Brad Carlson, Sole Member

**MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company

By: _____          Date: 12|11|20
     Brad Carlson, Sole Member

7QM6179.DOCX

**FORCE COMMERCIAL BUILDING, LLC**, a Missouri
limited liability company

By: _____     Date: 12|11|20

Brad Carlson, Manager

"LENDER"

**ENTERPRISE BANK & TRUST**

By: _____     Date: 12/11/20

~~Aaron Wiens,~~ Vice President

Colleen S. Hayes

7QM6179.DOCX

**SECOND AMENDMENT TO PROMISSORY NOTE**
(Apex Line of Credit)

THIS SECOND AMENDMENT TO PROMISSORY NOTE (the "Amendment") is made effective as of November 29, 2021 by and between **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **EMPIRICAL PRIME LLC,** f/k/a Force Midwest, LLC, a Missouri limited liability company ("Empirical"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGUS I LLC,** f/k/a Mulungas, LLC, a Missouri limited liability company ("Mulungas I"), **EP MANUFACTURING LLC,** f/k/a Mid Western Automotive, LLC, a Missouri limited liability company ("EP"), and **MULUNGAS II LLC,** f/k/a Force Commercial Building, LLC, a Missouri limited liability company ("Mulungas II" and together with Apex, Empirical, MAG, Mulungas I, and EP collectively herein "Borrower"), and **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender").

## RECITALS

**A.**    On December 2, 2019 Borrower executed and delivered to Lender that certain Promissory Note (Apex Line of Credit) (the "Original Note") in the maximum principal amount of $1,000,000.00. Effective November 30, 2020 Borrower and Lender entered into that certain First Amendment to Promissory Note (the "First Amendment" and together with the Original Note herein the "Note"). All words and phrases used in this Amendment with their initial letters capitalized shall have the meaning assigned to them in the Note unless such words and phrases are otherwise specifically defined herein.

**B.**    Borrower desires to extend the Maturity Date of the Note from November 29, 2021 to May 28, 2022. Conditioned upon and subject to Borrower and Lender executing this Amendment Lender agrees to extend the Maturity Date of the Note to May 28, 2022.

## AGREEMENT

NOW THEREFORE, in consideration of the premises, the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1.    That the first sentence of Section 1(a) of the Note be, and hereby is, amended by replacing the date "November 29, 2021" with the date "May 28, 2022" so that said first sentence reads in its entirety as follows:

85L2473.DOCX

"Interest shall accrue on the outstanding principal balance due under this Note from the date hereof through May 28, 2022 (the "Maturity Date") at the Interest Rate or if applicable under the terms of this Note, the Default Rate."

2.    Upon demand by Lender, Borrower shall pay to Lender all costs and expenses, including attorney's fees, incurred by Lender, in amending the Note.

3.    Lender hereby waives any default under the terms of the Loan Agreement resulting from the transfer by Brad Carlson of his membership interests in Empirical, Mulungas I, Mulungas II, and EP to entities controlled by Brad Carlson and, provided Lender receives prior notice of such transfer, Lender hereby consents to the future transfer by Brad Carlson of his membership interests in Apex and MAG to entities controlled by Brad Carlson.

4.    Except as expressly amended by the terms of this Amendment, the terms of the Note remain in full force and effect.

5.    Waiver of Jury Trial. All of the parties to this Amendment knowingly and intentionally, irrevocably and unconditionally, waive any and all rights to a trial by jury in any litigation arising out of or concerning this Amendment or any other related loan documents or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

6.    Statutory Notice. The following provision is included in compliance with Missouri Revised Statutes Section 432.047: ORAL OR UNEXECUTED AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THIS AMENDMENT, THE NOTE OR THE LOAN AGREEMENT. TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENT REACHED BETWEEN BORROWER AND LENDER ARE CONTAINED IN THIS AMENDMENT THE NOTE, THE LOAN AGREEMENT, AND THE LOAN DOCUMENTS WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENTS OF THE AGREEMENT BETWEEN BORROWER AND LENDER, EXCEPT AS MAY BE LATER AGREED TO IN WRITING.

[Signature page to follow]

IN WITNESS WHEREOF, Borrower and Lender have duly executed this Second Amendment to Promissory Note as of the day and year written below.

**"BORROWER"**

**APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company

By: _____        Date: 12|16|21
Brad Carlson, Manager

**EMPIRICAL PRIME LLC,** f/k/a Force Midwest, LLC, a Missouri limited liability company

By: Bradley James Carlson Revocable Trust
Dated February 7, 2017, its Manager

By: _____        Date: 12|16|21
Bradley James Carlson, Trustee

**MAG TRUCKS, LLC,** a Missouri limited liability company

By: _____        Date: 12|16|21
Brad Carlson, Manager

**MULUNGAS I LLC,** f/k/a Mulungas, LLC, a Missouri limited liability company

By: Empirical Prime LLC, its Manager

By: Bradley James Carlson Revocable Trust
Dated February 7, 2017, its Manager

By: _____        Date: 12|16|21
Bradley James Carlson, Trustee

85L2473.DOCX

**EP MANUFACTURING, LLC,** f/k/a Mid Western Automotive, LLC,
a Missouri limited liability company

By: Empirical Prime LLC, its Manager

    By: Bradley James Carlson Revocable Trust
    Dated February 7, 2017, its Manager

    By: _____    Date: __12/16/21__
        Bradley James Carlson, Trustee

**MULUNGAS II LLC,** f/k/a Force Commercial Building, LLC,
a Missouri limited liability company

By: Empirical Prime LLC, its Manager

    By: Bradley James Carlson Revocable Trust
    Dated February 7, 2017, its Manager

    By: _____    Date: __12/16/21__
        Bradley James Carlson, Trustee

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By:_____    Date: __2/7/21__
    Aaron Wiens, Vice President

85L2473.DOCX

## THIRD AMENDMENT TO PROMISSORY NOTE
### (Apex Line of Credit)

THIS THIRD AMENDMENT TO PROMISSORY NOTE (the "Amendment") is made effective as of May 28, 2022 by and between **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **EMPIRICAL PRIME LLC,** f/k/a Force Midwest, LLC, a Missouri limited liability company ("Empirical"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MULUNGUS I LLC,** f/k/a Mulungas, LLC, a Missouri limited liability company ("Mulungas I"), **EP MANUFACTURING LLC,** f/k/a Mid Western Automotive, LLC, a Missouri limited liability company ("EP"), and **MULUNGAS II LLC,** f/k/a Force Commercial Building, LLC, a Missouri limited liability company ("Mulungas II" and together with Apex, Empirical, MAG, Mulungas I, and EP collectively herein "Borrower"), and **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender").

### RECITALS

**A.**     On December 2, 2019 Borrower executed and delivered to Lender that certain Promissory Note (Apex Line of Credit) (the "Original Note") in the maximum principal amount of $1,000,000.00.  Effective November 30, 2020 Borrower and Lender entered into that certain First Amendment to Promissory Note (the "First Amendment") and effective November 29, 2021 Borrower and Lender entered into that certain Second Amendment to Promissory Note (the "Second Amendment" and together with the Original Note and the First Amendment herein the "Note") which, among other amendments, extended the Maturity Date of the Note to May 28, 2022.  All words and phrases used in this Amendment with their initial letters capitalized shall have the meaning assigned to them in the Note unless such words and phrases are otherwise specifically defined herein.

**B.**     Borrower desires to extend the Maturity Date of the Note from May 28, 2022 to November 24, 2022.  Conditioned upon and subject to Borrower and Lender executing this Amendment Lender agrees to extend the Maturity Date of the Note to November 24, 2022 and otherwise amend the Note as set forth herein.

### AGREEMENT

NOW THEREFORE, in consideration of the premises, the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

8D19996.DOCX

1.      That the first sentence of Section 1(a) of the Note be, and hereby is, amended by replacing the date "May 28, 2022" with the date "November 24, 2022" so that said first sentence reads in its entirety as follows:

"Interest shall accrue on the outstanding principal balance due under this Note from the date hereof through November 24, 2022 (the "Maturity Date") at the Interest Rate or if applicable under the terms of this Note, the Default Rate."

2.      That Section 5 of the Note be, and hereby is, amended by deleting therefrom the definitions of the terms "Interest Rate", "LIBOR Rate", and "Margin" and adding to Section 5 the following definitions:

""Interest Rate" shall mean a variable rate of interest adjusting monthly, without notice to the Borrower, as of each Term SOFR Adjustment Date equal to the greater of (a) the Term SOFR plus a margin of Two and 85/100th percent (2.85%) or (b) Four and 00/100th percent (4.00%) per annum.

"Term SOFR" shall mean a rate per annum equal to the CME Term SOFR Reference Rate for a one (1) month tenor as reported by Bloomberg Finance, L.P, published for the date that is two (2) Business Days prior to the first Business Day of the calendar month, adjusted for any reserve requirement and any subsequent costs arising from a change in government regulation. The initial Term SOFR rate applicable hereunder shall be the Term SOFR rate in effect two (2) Business Days prior to the first Business Day of the calendar month in which this Note is dated. The Term SOFR rate shall be adjusted on that date which is thirty (30) days following the date of this Note, and again subsequently adjusted on every thirty (30) day anniversary period occurring thereafter until all indebtedness owing under this Note is paid in full, using the Term SOFR rate in effect two (2) Business Days prior to the first Business Day of the calendar month in which each Term SOFR rate adjustment occurs (the date of each Term SOFR rate adjustment is referred to in this Note as the "Term SOFR Adjustment Date"). Notwithstanding the foregoing, in no event shall the Term SOFR rate be deemed to be less than zero. As used herein "Business Day" shall mean any day other than a Saturday, Sunday or a legal holiday in which banks are authorized or required to be closed for the conduct of commercial banking business in St. Louis, Missouri.  Lender's internal records of applicable interest rates shall be determinative in the absence of manifest error. The independent index described herein is sometimes referred to as the index (the "Index"). If the Lender determines in good faith (which determination shall be conclusive, absent manifest error) that: (A) Term SOFR does not accurately reflect the cost to the Lender of the Loan(s); or (B) a Regulatory Change (as hereinafter defined) shall, in the reasonable determination of the Lender, make it unlawful or commercially unreasonable for the Lender to use Term SOFR as the index for purposes of determining the Interest Rate, then: (i) Term SOFR shall be replaced with an alternative or successor rate or index chosen by the Lender in its reasonable discretion; and (ii) the margin may also be adjusted by Lender in its reasonable discretion, giving due consideration to

8D19996.DOCX

Third Amendment to Promissory Note (Apex Line of Credit) - Page 2 of 5

market convention for determining rates of interest on comparable loans. "Regulatory Change" shall mean a change in any applicable law, treaty, rule, regulation or guideline, or the interpretation or administration thereof, by the administrator of the relevant benchmark or its regulatory supervisor, any governmental authority, central bank or other fiscal, monetary, or other authority having jurisdiction over Lender or its lending office."

3.      Upon demand by Lender, Borrower shall (i) pay to Lender a loan fee of Two Hundred Fifty and 00/100 Dollars ($250.00), which fee has been fully earned by Lender and (ii) pay to Lender all costs and expenses, including attorney's fees, incurred by Lender, in amending the Note.

4.      Except as expressly amended by the terms of this Amendment, the terms of the Note remain in full force and effect.

5.      **Waiver of Jury Trial. All of the parties to this Amendment knowingly and intentionally, irrevocably and unconditionally, waive any and all rights to a trial by jury in any litigation arising out of or concerning this Amendment or any other related loan documents or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.**

6.      **Statutory Notice. The following provision is included in compliance with Missouri Revised Statutes Section 432.047: ORAL OR UNEXECUTED AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THIS AMENDMENT, THE NOTE OR THE LOAN AGREEMENT. TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENT REACHED BETWEEN BORROWER AND LENDER ARE CONTAINED IN THIS AMENDMENT THE NOTE, THE LOAN AGREEMENT, AND THE LOAN DOCUMENTS WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENTS OF THE AGREEMENT BETWEEN BORROWER AND LENDER, EXCEPT AS MAY BE LATER AGREED TO IN WRITING.**

[Signature page to follow]

8D19996.DOCX

Third Amendment to Promissory Note (Apex Line of Credit) - Page 3 of 5

IN WITNESS WHEREOF, Borrower and Lender have duly executed this Third Amendment to Promissory Note as of the day and year written below.

**"BORROWER"**

**APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company

By: _____        Date: _____
     Brad Carlson, Manager

**EMPIRICAL PRIME LLC,** f/k/a Force Midwest, LLC, a Missouri limited liability company

By: Bradley James Carlson Revocable Trust
     Dated February 7, 2017, its Manager

     By: _____        Date: _____
       Bradley James Carlson, Trustee

**MAG TRUCKS, LLC,** a Missouri limited liability company

By: _____        Date: _____
     Brad Carlson, Manager

**MULUNGAS I LLC,** f/k/a Mulungas, LLC, a Missouri limited liability company

By: Empirical Prime LLC, its Manager

     By: Bradley James Carlson Revocable Trust
     Dated February 7, 2017, its Manager

     By: _____        Date: _____
       Bradley James Carlson, Trustee

8D19996.DOCX

**EP MANUFACTURING, LLC,** f/k/a Mid Western Automotive, LLC,
a Missouri limited liability company

By: Empirical Prime LLC, its Manager

    By: Bradley James Carlson Revocable Trust
    Dated February 7, 2017, its Manager

    By: _____      Date: 6/8/22
       Bradley James Carlson, Trustee


**MULUNGAS II LLC**, f/k/a Force Commercial Building, LLC,
a Missouri limited liability company

By: Empirical Prime LLC, its Manager

    By: Bradley James Carlson Revocable Trust
    Dated February 7, 2017, its Manager

    By: _____      Date: 6/8/22
       Bradley James Carlson, Trustee

**"LENDER"**

**ENTERPRISE BANK & TRUST**

By: _____      Date: 6/8/22
   Aaron Wiens, Vice President


8D19996.DOCX

Third Amendment to Promissory Note (Apex Line of Credit) - Page 5 of 5