# Exhibit F

## PROMISSORY NOTE
### (Mulugas Term)

**$2,832,000.00**                                                        **December 2, 2019**

FOR VALUE RECEIVED, **MULUNGAS, LLC,** a Missouri limited liability company ("Mulungas"), **FORCE MIDWEST, LLC,** a Missouri limited liability company ("Force"), **APEX SPECIALTY VEHICLES, LLC,** a Missouri limited liability company ("Apex"), **MAG TRUCKS, LLC,** a Missouri limited liability company ("MAG"), **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("Mid Western"), and **FORCE COMMERCIAL BUILDING, LLC,** a Missouri limited liability company ("Force Commercial" and together with Mulungas, Force, Apex, MAG, and Mid Western collectively herein "Borrower"), having an address at 3320 S. Outer Belt Road, Grain Valley, Missouri 64029 promises to pay to the order of **ENTERPRISE BANK & TRUST,** a Missouri chartered trust company ("Lender"), at the office of Lender at 12695 Metcalf Avenue, Overland Park, Kansas 66213 or at such other place as the Lender may from time to time designate in writing, the principal sum of **TWO MILLION EIGHT HUNDRED THIRTY-TWO THOUSAND and 00/100THS DOLLARS ($2,832,000.00),** together with interest thereon, as follows (certain capitalized terms used herein are hereinafter defined):

1.      **Accrual of Interest; Interest Rate; Payments, Term.**

(a)      Interest shall accrue on the outstanding principal balance due under this Note from the date hereof through December 20, 2024 (the "Maturity Date") at a fixed rate equal to Four and 29/100th percent (4.29%) per annum (the "Interest Rate"), or if applicable under the terms of this Note, the Default Rate. Interest shall be computed on the daily unpaid principal balance outstanding hereunder.

(b)      Commencing on January 20, 2020 and on the corresponding day of each month thereafter through the Maturity Date Borrower shall pay to Lender a monthly installment payment sufficient to fully amortize the then outstanding principal balance and accrued interest at the Interest Rate in 156 consecutive monthly payments. Each payment shall be applied first to accrued interest, and the remainder to the unpaid principal balance evidenced hereby.

(c)      Repayment of the entire outstanding unpaid principal balance of this Note, together with all unpaid accrued interest shall be due and paid in full in one payment on the Maturity Date.

(d)      Borrower acknowledges that the monthly payments described above will not provide full amortization of the outstanding principal balance of this Note over the term of the Note, and that a substantial payment of principal (a balloon payment), in an amount greater than the amounts of such periodic interest payments, will be required on the Maturity Date.

(e)      All payments under this Note (other than payments of late charges) shall be first applied to accrued interest and the remainder to principal. Remittances in payment of any part of the indebtedness evidenced hereby other than in the required amount in immediately

7C54683.DOCX

available funds shall not, regardless of any receipt or credit issued therefore, constitute payment until the required amount is actually received by the holder hereof in immediately available funds and shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived). Acceptance by the holder hereof of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only and shall not in any way excuse the existence of an Event of Default.

(f)    Interest under this Note shall be computed based on a 365/360 basis: that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under the Mulungas Term Loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the Loan Documents.

2.    **Prepayment. Prepayment, Yield Maintenance.** Provided that no Event of Default then exists, Borrower shall have the right to prepay this Note at any time before the Maturity Date, subject to the following conditions:

(a)    not less than thirty (30) days prior to the date upon which Borrower intends to make prepayment, Borrower shall deliver to Lender written notice of Borrower's intention to prepay the Note and state the prepayment date, the proposed prepayment amount, and the source of funds for the proposed prepayment within such notice, which date shall coincide with a scheduled payment date hereunder;

(b)    if such prepayment is available due to a Refinance Transaction, or this Note becomes due by acceleration or otherwise, then Borrower shall pay a prepayment premium equal to the amount of the Yield Maintenance Payment at the time of the closing of the Refinance Transaction or the outstanding amount due at the time of acceleration;

(c)    the prepayment shall include all accrued and unpaid interest through the date of the prepayment on the entire outstanding principal balance due hereunder; and

(d)    partial prepayment will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

"Refinance Transaction" shall mean any transaction that occurs prior to the Maturity Date in which Borrower obtains the funds to prepay this Note from the proceeds of a loan made to Borrower or a Borrower Affiliate by a bank or other financial institution. A Refinance Transaction shall be deemed to specifically exclude prepayment of this Note from (i) Borrower's operating income, (ii) contributions to Borrower's capital by its Members, or (iii) a sale of all or a substantial portion of Borrower's assets not in the ordinary course of Borrower's business.

The "Yield Maintenance Payment" shall be an amount equal to (i) for any prepayment made through and including the first year anniversary of the date of this Note, three percent (3%)

of the prepayment amount, (ii) for any prepayment made after the first year anniversary date of this Note through and including the second year anniversary date of this Note two percent (2%) of the prepayment amount, and (iii) for any prepayment made after the second year anniversary of this Note through the Maturity Date one percent (1%) of the prepayment amount.

Borrower acknowledges that prepayment may result in Lender incurring additional costs, expenses and/or liabilities, and that it is difficult to ascertain the full extent of such costs, expenses and/or liabilities. Borrower, therefore, agrees to pay the above-described Yield Maintenance Payment if such prepayment is available due to a Refinance Transaction or if the Note shall become due and payable at any time prior to the Maturity Date by acceleration or otherwise, and agrees that said amount represents a reasonable estimate of the prepayment costs, expenses and/or liabilities of Lender. If Borrower fails to pay any Yield Maintenance Payment when due, the amount of such Yield Maintenance Payment shall thereafter bear interest until paid at the Default Rate or, at Lender's option, the rate of interest applicable to the unpaid principal of this Note (even if no principal remains owing).

**3. Security.**

(a)    This Note is issued pursuant to a certain Business Loan Agreement between Borrower and Lender of even date herewith (the "Loan Agreement") (as the same may be amended from time to time; capitalized terms used herein not otherwise defined herein shall have the meaning assigned to them in the Loan Agreement) and is subject to the terms thereof.

(b)    This Note is secured by the Security Agreement, the Mortgage, the Assignment of Rents, and the other Loan Documents.

(c)    As a material inducement to Lender making the Mulungas Term Loan, each Guarantor has executed a Guaranty for the purposes of unconditionally guaranteeing Borrower's obligations under this Note and the Loan Documents.

**4.    Certain Terms Defined.** In addition to words and terms defined elsewhere in this Note the following terms, as used in this Note, shall have the following meanings:

"Apex Line of Credit Note shall mean the Promissory Note dated of even date herewith made by Borrower, payable to Lender or its order, in the original principal amount of $1,000,000.00 as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Apex Term Note" shall mean the Promissory Note dated of even date herewith made by Borrower, payable to Lender or its order, in the original principal amount of $662,914.00 as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Default Rate" shall mean a per annum interest rate equal to the Interest Rate plus five percent (5%) per annum.

"Event of Default" shall mean Borrower's failure to pay when due any payment of any sum of money required to be paid under the Note, Borrower's failure to pay any sum of money required to be paid under the Apex Line of Credit Note, the Apex Term Note, or the MAG Line of Credit Note, or a default of any provision of the Loan Documents and failure to cure the default within the applicable cure period, if any, provided in the Loan Documents for such default.

"Guarantor" shall mean Brad Carlson and any other person or entity who shall now or hereafter give to Lender a guaranty of any obligation of Borrower to Lender under the Loan Documents.

"Guaranty" shall mean the Guaranty Agreement of even date herewith given to Lender by the Guarantor with respect to the Mulungas Term Loan and all other obligations of Borrower under the Loan Documents, and any amendments thereto hereafter made.

"Loan Documents" shall mean collectively this Note, the Apex Line of Credit Note, the Apex Term Note, the MAG Line of Credit Note, the Loan Agreement, the Security Agreement, the Mortgage, the Assignment of Rents, each Guaranty of all or part of the Mulungas Term Loan given to Lender by the Guarantors, each other document defined as a Loan Document in the Loan Agreement, and each other instrument, agreement or document now or hereafter evidencing, securing, supporting, guaranteeing or executed in connection with the indebtedness evidenced hereby, and any amendments to any of the same hereafter made.

"MAG Line of Credit Note" shall mean the Promissory Note dated of even date herewith made by Borrower, payable to Lender or its order, in the original principal amount of $2,000,000.00 as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Mulungas Term Loan" shall mean all of the indebtedness evidenced hereby from time to time, whether principal, interest or otherwise, and all sums coming due Lender under any of the Loan Documents, except the Apex Line of Credit Note, Apex Term Note, or the MAG Line of Credit Note, from time to time.

"Note" shall mean this Promissory Note, as the same may be amended, modified, supplemented, replaced, exchanged, extended, renewed, increased, refunded or restated from time to time.

"Usury Law" shall mean any law or regulation of any governmental authority having jurisdiction, limiting the amount of interest that may be paid for the loan, use or detention of money.

5.    **Late Charge**. If any payment due under this Note is not received by Lender within fifteen (15) days after such payment is due, Borrower shall pay to Lender on demand a late charge in an amount equal to five percent (5.00%) of such overdue payment, to compensate Lender for some of the additional costs and expenses of processing late payments. Such fifteen (15) day period shall not be construed as in any way extending the due date of any payment. The

"late charge" is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other remedy Lender may have and is in addition to any fees and charges of any agents or attorneys which Lender may employ upon the occurrence of an Event of Default, whether authorized herein or by law.

6.     **Event of Default.** If an Event of Default shall occur and continue to exist then: (a) the entire unpaid principal balance of the Mulungas Term Loan together with all other sums payable to Lender under this Note and/or any of the other Loan Documents, including unpaid interest on the Mulungas Term Loan and all such sums, shall at the option of Lender become immediately due and payable without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration or any other notice or other action, all of which are hereby waived by Borrower; and (b) notwithstanding any other provision of this Note, during the period of existence of such Event of Default, interest on the Mulungas Term Loan shall accrue and be paid at the lesser of (i) the Default Rate, or (ii) the maximum lawful rate of interest under the applicable Usury Law. All of the rights, remedies, powers and privileges (together, "Rights") of the holder hereof provided for in this Note and in any other Loan Document are cumulative of each other and of any and all other Rights at law or in equity. The resort to any Right shall not prevent the concurrent or subsequent employment of any other appropriate Right. No single or partial exercise of any Right shall exhaust it, or preclude any other or further exercise thereof, and every Right may be exercised at any time and from time to time. No failure by the holder hereof to exercise, nor delay in exercising any Right, including but not limited to the right to accelerate the maturity of this Note, shall be construed as a waiver of any Event of Default or as a waiver of the Right. Without limiting the generality of the foregoing provisions, the acceptance by the holder hereof from time to time of any payment under this Note which is past due or which is less than the payment in full of all amounts due and payable at the time of such payment, shall not (i) constitute a waiver of or impair or extinguish the right of the holder hereof to accelerate the maturity of this Note or to exercise any other Right at the time or at any subsequent time, or nullify any prior exercise of any such Right, or (ii) constitute a waiver of the requirement of punctual payment and performance or a novation in any respect. If any holder of this Note retains an attorney in connection with any Event of Default or at maturity or to collect, enforce or defend this Note or any other Loan Document in any lawsuit or in any probate, reorganization, bankruptcy, arbitration or other proceeding, then Borrower agrees to pay to each such holder, in addition to principal, interest and any other sums owing to Lender hereunder and under the other Loan Documents, all reasonable costs and expenses incurred by such holder in trying to collect this Note or in any such suit or proceeding, including, without limitation, reasonable attorneys' fees and expenses as permitted by law, investigation costs and all court costs, whether or not suit is filed hereon, whether before or after the Maturity Date, as said date may be extended by the terms hereof, or whether in connection with bankruptcy, insolvency or appeal, or whether collection is made against Borrower or any guarantor or endorser or any other person primarily or secondarily liable hereunder.

7.     **Right of Setoff.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts

Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect its charge and setoff rights provided in this paragraph.

**8.      Choice of Governing Law.** Lender and Borrower have agreed, and do agree, that this Note is to be construed and enforced in all respects in accordance with the internal laws (without regard to any conflicts of laws rules which might otherwise require reference to the laws of any other jurisdiction) of the State of Missouri, including but not limited to the Usury Laws of the State of Missouri.

**9.      Compliance with Usury Laws.** All agreements contained in the Loan Documents are expressly limited so that in no event whatsoever, shall the amount paid or agreed to be paid by or on behalf of Borrower to Lender exceed the highest lawful rate permissible under any applicable Usury Law. If, from any circumstances whatsoever, compliance with any of the Loan Documents, at the time performance thereunder shall be due, shall exceed the Usury Law which a court of competent jurisdiction may deem applicable thereto, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such Usury Law. If from any circumstance, Lender shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between Borrower and Lender; provided, however, that there shall be no automatic reduction of such payments or obligations as to any party barred by law from availing itself in any action or proceeding of the defense of usury, or any party barred or exempted from the operation of any Usury Law, or in the event and to the extent the Mulungas Term Loan, because of its amount or purpose or for any other reason, is exempt from the operation of the Usury Law.

**10.      Revival of Liability.** If any payments or proceeds received by Lender are subsequently invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid to a trustee, to Borrower, directly or as a debtor-in-possession, to a receiver, or any other person, whether directly or indirectly, under any bankruptcy law, state or federal law, common law, or equitable cause, then Borrower's obligation to make all such payments shall be revived and shall continue in full force and effect as if such payment or proceeds had never been received by Lender, but the interest deemed to have accrued on such payments or proceeds from the date the payments were originally due shall be calculated at the applicable rate until paid or an Event of Default has occurred.

**11.      Miscellaneous Provisions.** If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby. This Note may not be changed, amended or modified except by agreement in writing signed by Borrower and Lender. Time is of the essence with respect to all of Borrower's obligations and agreements under this Note. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this

Note, but this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Section headings and captions herein are provided solely for convenience, and shall not be considered in interpreting or construing the provisions of this Note.

**12.    Successors and Assigns.** Whenever used in this Note, the words "Borrower" and "Lender" shall be deemed to include the respective successors of Borrower and of Lender, and "Lender" shall also include any subsequent holder of this Note.  This Note shall be binding in accordance with its terms upon Borrower and its successors and assigns.  The holder of this Note may, from time to time, sell or offer to sell the loan evidenced by this Note, or interests therein, to one or more assignees or participants and is hereby authorized to disseminate any information it has pertaining to the loan evidenced by this Note, including, without limitation, any security for this Note and credit information on Borrower, any of its principals and any guarantor of this Note, to any such assignee or participant or prospective assignee or prospective participant, and to the extent, if any, specified in any such assignment or participation, such assignee(s) or participant(s) shall have the rights and benefits with respect to this Note and the other Loan Documents as such person(s) would have if such person(s) were Lender hereunder.

**13.    Business Purpose.** Borrower agrees that it will use the proceeds of this Note for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

**14.    Entire Agreement.** This Note and the other Loan Documents collectively: (a) constitute the final expression of the agreement between Borrower and Lender concerning the Mulungas Term Loan; (b) contain the entire agreement between Borrower and Lender respecting the matters set forth herein and in such other Loan Documents; (c) may not be contradicted by evidence of any prior or contemporaneous oral agreements or understandings between Borrower and Lender; and (d) supersede all prior agreements and understandings between Lender and Borrower respecting such matters.

**15.    Notices.** All notices required or permitted to be given hereunder shall be deemed to have been duly given: (a) three (3) days after being sent by certified United States Mail, return receipt requested, to Borrower and to Lender at their respective addresses hereinabove set forth, or to such other place or places as either party hereto may from time to time designate to the other for the purpose of receiving notices hereunder; or (b) if given in the manner provided for the giving of notices under the Loan Agreement.

**16.    Execution of Documents, Consultation with Counsel.** Borrower acknowledges and agrees that it has had an opportunity to review and consider the terms and provisions of this Note and each Loan Document, to consult with counsel of its choice, if desired, and to suggest changes to the structure and terms of this Note and the other Loan Documents.  Borrower warrants and agrees that its execution of this Note and the other Loan Documents is made voluntarily and with full knowledge of the significance and effect of the Note and the other Loan Documents.

**17.    Waiver of Jury Trial. BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDER MAY BE**

PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTION OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ' ARE NOT PARTIES TO THIS NOTE, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER, AND BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. BORROWER AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS DOCUMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

18.     **Venue.** Venue for any action arising pursuant to or to enforce any provision of this Note shall, at the election of Lender, in its sole discretion, be exclusively found in the Circuit Court of Jackson County, Missouri or the or the state courts for each county in which real property subject to any one or more of the Leases is located. Borrower hereby submits to the jurisdiction of such courts.

19.     **Statutory Notice.** The following provision is included in compliance with Missouri Revised Statutes Section 432.047: ORAL OR UNEXECUTEDAGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE NOTE OR THE LOAN AGREEMENT. TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENT REACHED BETWEEN BORROWER AND LENDER ARE CONTAINED IN THIS NOTE, THE LOAN AGREEMENT, AND THE LOAN DOCUMENTS WHICH ARE THE COMPLETE AND EXCLUSIVE STATEMENTS OF THE AGREEMENT BETWEEN BORROWER AND LENDER, EXCEPT AS MAY BE LATER AGREED TO IN WRITING.

[Signature Page to follow]

IN WITNESS WHEREOF, this Promissory Note is effective the date first written above and Borrower has executed this Promissory Note as of the day and year written below.

**"BORROWER"**

**MULUNGAS, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/19_
Brad Carlson, Sole Member


**FORCE MIDWEST, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/19_
Brad Carlson, Manager


**APEX SPECIALTY VEHICLES, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/10_
Brad Carlson, Manager


**MAG TRUCKS, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/19_
Brad Carlson, Manager


**MID WESTERN AUTOMOTIVE, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/19_
Brad Carlson, Sole Member


**FORCE COMMERCIAL BUILDING, LLC,** a Missouri
limited liability company

By: _____                    Date: _12/2/19_
Brad Carlson, Manager

7C54683.DOCX