# Exhibit S

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (this "**Agreement**") is made and entered into as of March 30, 2023 (the "**Effective Date**"), by and among **ENTERPRISE BANK & TRUST, a Missouri chartered trust company** ("**Lender**") and **MULUNGAS I LLC** f/k/a **MULUNGAS, LLC**, a Missouri limited liability company ("**Mulungas I**"), **MULUNGAS II LLC**, f/k/a **FORCE COMMERCIAL BUILDING, LLC**, a Missouri limited liability company ("**Mulungas II**"), **EMPIRICAL PRIME, LLC** f/k/a **FORCE MIDWEST, LLC**, a Missouri limited liability company ("**Empirical**"), **APEX SPECIALTY VEHICLES, LLC**, a Missouri limited liability company ("**Apex**"), **MAG TRUCKS, LLC**, a Missouri limited liability company ("**Mag**"), and **EP MANUFACTURING LLC** f/k/a **MID WESTERN AUTOMOTIVE, LLC,** a Missouri limited liability company ("**EP**" and together with Mulungas I, Mulungas II, Empirical, Apex and Mag, "**Borrowers**"), and **BRADLEY J. CARLSON**, individually ("**Carlson**"), and **BRADLEY JAMES CARLSON, SOLE TRUSTEE** ("**Trustee**"), **OR HIS SUCCESSORS IN TRUST, UNDER THE BRADLEY JAMES CARLSON REVOCABLE TRUST DATED FEBRUARY 7, 2017, AND ANY AMENDMENTS THERETO** ("**Trust**", and with Carlson, Trustee and each other guarantor from time to time that is a party hereto, collectively, "**Guarantors**" and "**Guarantor**" shall mean any one of them)(Borrowers and Guarantors are sometimes referred to collectively herein as the "**Obligors**" and "**Obligor**" shall mean any one of them.)

## <u>RECITALS</u>

A.      Lender and Mulungas II are parties to a certain Business Loan Agreement dated as of April 30, 2019 (the "**Mulungas BLA**").

B.      Lender and Borrowers are also parties to a certain Business Loan Agreement dated December 2, 2019 (as amended by that certain First Amendment to Business Loan Agreement, dated February 11, 2020, that certain Second Amendment to Business Loan Agreement, dated August 31, 2020, and that certain Third Amendment to Business Loan Agreement dated November 30, 2020) (the "**Borrowers BLA**" and together with the Mulungas BLA, the "**Business Loan Agreements**").

C.      Pursuant to the Business Loan Agreements, Lender made to Borrowers certain loans in the original principal amounts of $768,000.00 (Loan No. REDACTED), $1,000,000.00 ((Loan No. REDACTED), $2,000,000.00 (Loan No. REDACTED) and $2,832,000.00 (Loan REDACTED) (collectively the "**Loans**") which Loans are evidenced by the following promissory notes (collectively the "**Notes**") and/or related documents:

     1.  Loan REDACTED: a Promissory Note dated April 30, 2019 in the original principal amount of $768,000.00 executed by Mulungas II in favor of Lender (**"First Note"**).

     2.  Loan REDACTED: a Promissory Note (Apex Line of Credit) dated December 2, 2019 in the original principal amount of $1,000,000.00 executed by Borrowers in favor of Lender, (as amended pursuant to that certain First Amendment to Promissory Note dated as November 30, 2020, that certain

Second Amendment to Promissory Note dated as November 29, 2021, and that certain Third Amendment to Promissory Note dated as May 28, 2022, the "**Second Note**").

3. Loan REDACTED: a Promissory Note (MAG Line of Credit) dated December 2, 2019 in the original principal amount of $2,000,000.00 executed by Borrowers in favor of Lender (as amended pursuant to that certain First Amendment to Promissory Note dated as February 11, 2020, that certain Second Amendment to Promissory Note dated as November 30, 2020, and that certain Third Amendment to Promissory Note dated as November 29, 2021, and that certain Fourth Amendment to Promissory Note dated May 28, 2022, amending, among other things, the principal amount to $4,000,000 and the maturity date to November 24, 2022 ("**Third Note**").

4. Loan REDACTED: a Promissory Note dated December 2, 2019 in the original principal amount of $2,832,000.00 executed by Borrowers in favor of Lender (the "**Fourth Note**").

D.       First Note, Second Note, Third Note and Fourth Note (sometimes jointly referred to herein as the "**Notes**") are secured by various documents and instruments, including but not limited to: (i) that certain Deed of Trust, dated December 23, 2013, executed by Mulungas I in favor of Lender, which was recorded on December 23, 2013, in the Jackson County Recorder of Deed's Office ("**Recorder Office**") as Instrument No. 2013E0129154 as modified by that certain Modification of Deed of Trust and Assignment of Rents dated September 12, 2016, which was recorded on September 26, 2016 in the Recorder's Office as Instrument No. 2016E0089501 and as amended by that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents, and Fixture Financing Statement (Future Advance) dated December 2, 2019, which was recorded on December 3, 2019 in the Recorder's Office as Instrument No. 2019E0099541 ("**First Mulungas Deed of Trust**"), on real property commonly described as 3320 S. Outer Road, Grain Valley, Missouri ("**Mulungas Mortgaged Property**"); (ii) that certain Deed of Trust, dated July 24, 2019, executed by Mulungas I in favor of Lender, which was recorded on July 30, 2019, in the Recorder's Office as Instrument No. 2019E0058567 ("**Second Mulungas Deed of Trust**"), on the Mulungas Mortgaged Property; (iii) that certain Deed of Trust, dated April 30, 2019, executed by Mulungas II in favor of Lender, which was recorded on May 1, 2019, in the Recorder's Office as Instrument No. 2019E0031483 as amended and modified by that certain First Amendment to Deed of Trust dated December 2, 2019, which was recorded on December 3, 2019 in the Recorder's Office as Instrument No. 2019E0099462 ("**Force Deed of Trust**"), on real property commonly described as 1100-1106 NW Valley Ridge Drive, Grain Valley, Missouri ("**Force Mortgaged Property**", together the Mulungas Mortgaged Property and the Force Mortgaged Property may be referred to herein as the "**Mortgaged Property**"); (iv) that certain Assignment of Leases and Rents dated April 30, 2019, executed in favor of Lender which was recorded on May 1, 2019 in the Recorder's Office as Instrument No. 2019E0031484 on the Force Mortgaged Property; (v) that certain Assignment of Leases and Rents dated December 2, 2019, executed in favor of Lender which was recorded on December 3, 2019 in the Recorder's Office as Instrument No. 2019E0099542 on the Mulungas Mortgaged Property; (vi) that certain Security Agreement dated December 2, 2019, by and between Mulungas I and Lender; (vii) that certain Security Agreement dated December 2, 2019,

2

by and between Mulungas II and Lender; (viii) that certain Security Agreement dated December 2, 2019, by and between Empirical and Lender; (ix) that certain Security Agreement dated December 2, 2019, by and between Apex and Lender; (x) that certain Security Agreement dated December 2, 2019, by and between Mag and Lender; (xi) that certain Security Agreement dated December 2, 2019, by and between EP and Lender. Guarantor Carlson guaranteed the payment and performance of the Notes pursuant to those certain Commercial Guarantees dated December 23, 2013, July 10, 2014, June 23, 2015 and April 30, 2019 and that certain Guaranty Agreement dated December 2, 2019 (together, the **"Carlson Guaranty"**). Guarantor Empirical guaranteed the payment and performance of the obligations of Mulungas I and Mulungas II pursuant to those certain Commercial Guarantees dated September 12, 2016 and April 30, 2019 (together, the **"Empirical Guaranty"**)(the Carlson Guaranty and Empirical Guaranty together will all other guarantees executed in connection with the Loans are collectively referred to herein as the **"Guaranty Agreements"**). The First Mulungas Deed of Trust, the Second Mulungas Deed of Trust, the Force Deed of Trust, the Assignments of Leases and Rents, the Security Agreements and the Guaranty Agreements together with all other security documents executed in connection with the Loans are collectively referred to herein as the **"Security Instruments"**. The real property and personal property pledged by Borrowers, Carlson and the Trust to Lender as a part of the Security Instruments shall be collectively referred to herein as the **"Collateral"**.

E.      The obligations of Borrowers and Guarantors to Lender are evidenced by the documents recited herein and, together with all other documents and instruments executed in connection with the Loans, are collectively referred to herein as the **"Loan Documents"**.

F.      The Second Note and Third Note have both matured and Lender has the right to immediately commence and pursue all rights to monetary recovery, enforcement against its collateral and all other remedies provided for in the Loan Documents and/or under applicable law.

G.      Both the First Note and Fourth Note are in default in accordance with the Loan Documents as set forth in demand letters sent from counsel for Lender dated March 14, 2023 (along with the maturity of the Second Note and Third Note, the **"Designated Defaults"**). Based upon the Designated Defaults, Lender has duly accelerated the maturity of both the First Note and Fourth Notes and has the right to immediately commence and pursue all rights to monetary recovery, enforcement against its collateral and all other remedies provided in the Loan Documents and/or under applicable law.

H.      The post-maturity/default rate of interest was applied on the Notes effective November 24, 2022 as follows: (i) Loan No. REDACTED: increased to 8.410%; (ii) Loan No. REDACTED: increased to 12.42%; (iii) Loan No. REDACTED: increased to 12.42%; and (iv) Loan No. REDACTED: increased to 9.290%.

I.      Borrowers and Guarantors have requested that, notwithstanding the continued existence of the Designated Defaults, Lender forbear from exercising Lender's remedies under the Loan Documents. Lender has agreed to forbear from exercising its remedies under the Loan Documents in reliance upon the agreements of Borrowers and Guarantors herein and subject to full performance by Borrowers and Guarantors of all acts required of them hereunder or that are necessary to give effect to all terms and conditions of this Agreement hereinafter set forth.

## AGREEMENT

In consideration of the Recitals and of the mutual promises and covenants contained herein and for other good and valuable consideration, Lender, Borrowers and Guarantors agree as follows:

1. **Recitals.** Borrowers and Guarantors acknowledge, confirm and agree that the matters stated in the Recitals set forth above are true and accurate in all respects, are a material part of this Agreement, are hereby incorporated by reference and may be relied upon for all purposes by the parties.

2. **Loan Balances.** The outstanding balances due under the Loans as of March 30, 2023 (the "**Total Balances**") are:

    (a)    Loan No. REDACTED:
Principal: $690,706.67
Interest: $3,113.94
Default Interest: $920.94
Late Fees: $527.80
TOTAL BALANCE: $695,269.35
Contract Per Diem: $103.79
Additional Default Interest Per Diem: $57.56

    (b)    Loan No. REDACTED:
Principal: $1,000,000.00
Interest: $1,253.13
Default Interest: $2,222.22
TOTAL BALANCE: $1,003,475.35
Contract Per Diem: $208.89
Additional Default Interest Per Diem: $138.89

    (c)    Loan No. REDACTED:
Principal: $3,962,309.12
Interest: $97,948.28
Default Interest: $8,820.90
TOTAL BALANCE: $4,069,078.30
Contract Per Diem: $827.68
Additional Default Interest Per Diem: $550.32

    (d)    Loan No. REDACTED:
Principal: $2,270,818.51
Interest: $2,706.05
Default Interest: $5,046.26
TOTAL BALANCE: $2,278,570.82
Contract Per Diem: $270.61
Additional Default Interest Per Diem: $315.39

4

3.      **Acknowledgement of Maturity and/or Default.** Obligors hereby acknowledge and agree that the Loan Documents have matured and/or are in default and all loan balances are now due and payable in full, and that Lender now has the right to pursue all rights to monetary recovery, enforcement against its collateral and any and all other rights and remedies permitted to Lender under the Loan Documents and/or under applicable law.

4.      **Agreement to Forbear.**

(a)      **Forbearance.**      During the period (the "**Forbearance Period**") commencing on the date hereof and ending on the earlier to occur of May 31, 2023, or the date that any Forbearance Default (as defined in Section 8 hereof) occurs, and subject to full compliance by Obligors of their obligations under this Agreement: Lender will forbear from foreclosing upon, repossessing or selling, through judicial proceedings or otherwise, any of the Mortgaged Property or other collateral for the Loans, seeking a receiver for the Mortgaged Property or any of the Borrowers, filing any proceeding to obtain judgment on the Notes or Guaranty or filing or joining in filing any involuntary petition in bankruptcy with respect to Borrowers, or otherwise initiate or participate in similar insolvency, reorganization, or moratorium proceedings for the benefit of creditors of Obligors as a result of the Designated Defaults.

(b)      **Interest on Loans.** During the Forbearance Period, interest shall continue to accrue on the principal balances of the Notes at the default rate of interest as provided in the Loan Documents and otherwise set forth herein. Lender shall waive the difference between the rates of interest on the Loans and the Default Rate of the Loans if Obligors have satisfied and met all terms and conditions of this Agreement by or before the expiration of the Forbearance Period.

(c)      **Maturity Dates of the Loan Documents.** The maturity dates of the Loan Documents shall be extended to the earlier of May 31, 2023, or termination of the Forbearance Period.

(d)      **Covenants and Agreements of Borrowers and Guarantors.** Borrowers and Guarantors covenant and agree that, until the Loans are repaid in full:

    a. **Payment.** Notwithstanding the maturity and Designated Defaults of the Notes, Obligors shall pay as follows:

        i. Upon execution of this Agreement, the total amount of $104,479.43, due and owing under the Loans, shall be paid to Lender;

        ii. Monthly interest payments at the pre-default Note rates on Loans REDACTED and REDACTED;

        iii. Monthly Loan payments on all Notes in accordance with their terms at the pre-default interest rates set forth therein; and,

iv. The Total Balances plus all accrued interest, expenses and fees, including, but not limited to, attorneys' fees and expenses shall be paid in full by or before expiration of the Forbearance Period.

No payments made by the Borrowers pursuant to the provisions of this Agreement shall result in the de-acceleration or reinstatement of the Notes.

b. **Payment of Outstanding Real Estate Taxes.** Borrowers shall pay **in full before due** any and all real estate taxes outstanding on the Mortgaged Property and provide proof of payment to Lender.

c. **Additional Reporting.** Borrowers shall provide to Lender year-to-date financial statements for each Borrower by April 15, 2023. If the financial reports are not provided by April 15, 2023, it shall be an Event of Default under this Agreement. Carlson and the Trust shall deliver to Lender by or before April 15, 2023 all complete current financial information detailing all assets owned, all liabilities owed and all sources of revenue/income. If the financial reports are not provided by or before April 15, 2023, it shall be an Event of Default hereunder.

d. **Compliance with Loan Documents.** Borrowers shall fully comply with all covenants and agreements set forth in the Loan Documents as amended by this Agreement, other than the obligation to pay each of the Notes in full as a result of the defaults and/or acceleration of such Notes.

5.    **Additional Loan.** Lender agrees to loan additional monies to Carlson and the Trust on the following terms:

(a)    Carlson, the Trust and Lender will execute the Note attached hereto as **Exhibit A** ("**New Note**"). The New Note shall accrue interest at the Wall Street Journal ("**WSJ**") Prime floating rate and shall amortize over thirty-six (36) months. The proceeds of the New Note shall solely be used to reduce the Total Balances at Lender's sole discretion.

(b)    The New Note shall be secured by a Deed of Trust on the real property located at [REDACTED] (the "**New Deed of Trust**"). A copy of the New Deed of Trust is attached hereto as **Exhibit B**.

(c)    Within two (2) days of receipt of the Employee Retention Credit funds ("**ERC Funds**") received by Borrowers or any Guarantors, Borrowers or Guarantors shall pay Lender $100,000.00 of the ERC Funds to be applied as a principal reduction of the New Note. Upon Lender's receipt of the payment of the ERC Funds, Carlson, the Trust and Lender shall re-amortize the payments under the New Note based on the remaining term of the New Note. Borrowers shall notify Lender within two (2) days of receipt of the ERC Funds. Borrowers' failure to provide notice to Lender within two (2) days of receipt shall be an Event of Default hereunder and shall immediately terminate the Forbearance Period without Lender having to provide notice to Borrowers or Guarantors.

6

(d)     Carlson and the Trust shall deliver year-to-date financial statements to Lender within fifteen (15) days after quarter end each quarter.  Failure to provide quarterly financial statements shall be an Event of Default.

(e)     Borrowers agree to pay and fully and unconditionally guarantee the payment of the $100,000.00 in ERC Funds to Lender.

6.     **Conditions to Effectiveness of this Agreement.**  This Agreement shall not be effective unless and until each of the following conditions shall have been satisfied in Lender's sole discretion or waived by Lender, for whose sole benefit such conditions exist:

(a)     This Agreement shall have been duly authorized and executed by each of the Borrowers and delivered to the Lender.

(b)     This Agreement shall have been duly executed by each of the Guarantors and delivered to Lender.

(c)     The Borrowers shall have, or shall cause to have been, delivered to the Lender copies of the resolutions of each of the Borrowers and Guarantors authorizing the execution, delivery and performance of this Agreement.

(d)     The Trust shall provide a trust certificate certifying its existence as well as the Trustee's authority to act thereunder.

7.     **Agreement of Guarantors**.  The undersigned Guarantors hereby consent to the terms of this Agreement, ratify and confirm the Guaranty Agreements in all respects and agree that the Guaranty Agreements remain in full force and effect, secure the repayment of the Loans and compliance by the Borrowers with their covenants and agreements under the Loan Documents and agree that the Guaranty Agreements secure the obligations of the Borrowers under the Loan Documents, as amended hereby.  The Guarantors acknowledge that they have consulted with counsel in connection with the negotiation, execution and delivery of this Agreement.

8.     **Default.**  Each of the following shall constitute a "**Forbearance Default**" hereunder:

(a)     the existence of any default or event of default (other than a Designated Default) under the Loan Documents which continues beyond any applicable notice, grace or cure period; or

(b)     Obligors' failure to keep or perform any of the covenants or agreements contained herein or any condition precedent is not fully satisfied;

(c)     Any Obligor (i) institutes or has instituted against it, or any of its property, any bankruptcy, reorganization, receivership, conservatorship, custodianship, sequestration, or other similar judicial or nonjudicial proceedings; (ii) makes, permits or agrees to make or permit an assignment or abandonment, whether or not conditional, of some or all of its property for the benefit of some or all of its creditors; (iii) commences or permits, voluntarily or involuntarily,

7

liquidation, dissolution, winding up, repossession, levy or foreclosure, upon or of itself or any of its property; (iv) ceases doing business in the ordinary course; (v) is sent a notice of acceleration by any creditor; (vi) is or becomes, or any of its property is or becomes, the defendant in or the object of, any suit for the payment of any indebtedness or the avoidance of any payment or conveyance now or hereafter made or received by it; (vii) commits, fails to commit or permits to continue any act or condition which does or could, whether by the passage of time, the giving or receipt of notice, the issuance of a judgment, decree or order, the commencement of judicial or non-judicial proceedings, or any combination thereof, become a default, breach or violation of any agreement, order, decree or law (including hazardous waste and other environmental statutes and regulations), articles of partnership, obligation or agreement whatsoever by which any Obligor or any Obligor's property is bound; (viii) commits, fails to commit or permits to continue any act or condition which does or could, whether by the passage of time or otherwise, constitute waste or abandonment with respect to any of its property, including the Property; (ix) has commenced against it or its property a foreclosure or other action for the collection of any indebtedness, including real estate, water, sewer, use, or other taxes. or

(d)     any representation or warranty of any Obligors herein shall be false, misleading or incorrect in any material respect.

Any Forbearance Default shall also constitute an additional Event of Default under all of the Loan Documents, for which no notice shall be required and with respect to which no grace or cure period shall apply.  Obligors hereby agree that if a Forbearance Default occurs, Lender may, in Lender's sole discretion, take any actions or assert any rights available to Lender under the Loan Documents or applicable law or equity without notice or security, including, but not limited to, appointment of a Receiver to keep, preserve and manage the Borrowers' property and to protect any business or business interest in Borrowers' property.

9.     **Reaffirmation of Loan Documents.**  Obligors each hereby acknowledge and agree that (a) except to the extent amended hereby, the Loan Documents continue in full force and effect, (b) the Loan Documents have been duly authorized, executed and delivered to Lender, remain in full force and effect as originally written or as modified herein or as previously modified by mutual written agreement of the parties and are valid, binding and enforceable against the Obligors in accordance with their respective terms; and (c) the Lender has no obligation to make additional loans or advances to the Obligors under the Loan Documents, it being expressly understood and agreed that the full principal balance of the Loans have been disbursed to the Borrowers and that the Lender has not made any commitment, other than any commitment herein, to lend any additional funds to the Obligors.  All indebtedness created under the Loan Documents is validly and unconditionally due and owing in full to Lender without any defense or offset whatsoever.  The unpaid balance of the Notes and all of the other obligations of the Obligors under the Loan Documents are now and shall hereafter continue to be secured by, among other things, a first priority, perfected security interest in the Collateral and the Mortgaged Property in accordance with the terms of the Security Instruments.  Each Obligor ratifies and reaffirms the terms and provisions of the Loan Documents, including all payment and performance obligations and obligations to indemnify under each Loan Document to which it is a party.  Borrowers have no defenses, claims, counterclaims, or other rights that could be asserted to impair, delay or adversely affect Lender's receipt of full payment and performance of all obligations owed to Lender by Borrowers with respect to the Loans, or the

same are hereby waived. Guarantors have no defenses, claims, counterclaims, or other rights that could be asserted to impair, delay or adversely affect Lender's receipt of full payment and performance of all obligations owed to Lender by Guarantors with respect to the Loans, or the same are hereby waived. All of the terms, conditions, provisions, agreements, requirements, promises, obligations, duties, covenants and representations of the Obligors under the Notes and the other Loan Documents (as applicable) are incorporated herein by this reference and are hereby ratified and affirmed in all respects by the Obligors.

10.    **Release of Lender; Waiver of Claims and Defenses.** As a material part of the consideration for Lender's execution of this Agreement, Obligors each hereby unconditionally and irrevocably release and forever discharge Lender and all of its directors, officers, employees, agents, attorneys, affiliates and subsidiaries from all liabilities, obligations, actions, claims, causes of action, suits, proceedings, damages, demands, costs and expenses whatsoever arising from or relating to any alleged or actual act, occurrence, omission or transaction occurring or happening prior to or on the date of this Agreement, including but not limited to any of the foregoing relating to the making, administration or enforcement of the Loan Documents. Without limiting the foregoing, all Obligors and each Obligor hereby unconditionally and irrevocable waives any and all defenses and claims existing or arising (or based on facts or circumstances actually or allegedly existing or arising) prior to or on the date of this Agreement which might otherwise limit their unconditional joint and several liability for all sums due under the Notes.

Obligors acknowledge and agree that: (i) each Obligor has received good and valuable consideration for its agreement to the terms and provisions of this Agreement, including this Section 10; (ii) its or his agreement to such terms and provisions is a material condition and inducement to Lender's willingness to enter into this Agreement and the forbearance contemplated herein; (iii) Lender is specifically relying upon Obligors' acknowledgements and agreements in this Section in executing this Agreement, and that in the absence of such agreements Lender would be unwilling to agree to the forbearance provided for in this Agreement; and (iv) it has been represented by competent counsel of its own choosing in the negotiation of this Agreement and this Section 10 in particular, and it has discussed this provision with counsel and hereby knowingly and willingly waives its rights as described in this Section 10.

11.    **Effect and Construction of Agreement.** Except as expressly provided herein, the Loan Documents shall remain in full force and effect in accordance with their respective terms, and this Agreement shall not be construed to:

(a)    impair the validity, perfection or priority of any lien or security interest securing the Loans;

(b)    waive or impair any rights, powers or remedies of Lender under the Loan Documents upon termination of the Forbearance Period, with respect to the Designated Defaults or otherwise;

9

(c)    constitute an agreement by Lender or require Lender to extend the Forbearance Period, or grant additional forbearance periods, or extend the time for payment of any of the Loans; or

(d)    constitute an agreement by Lender to make any further advances under the Loans or other extensions of credit to Borrowers during the Forbearance Period or otherwise.

In the event of any inconsistency between the terms of this Agreement and the other Loan Documents, this Agreement shall govern. Borrowers acknowledge that they have consulted with counsel and with such other experts and advisors as they have deemed necessary in connection with the negotiation, execution and delivery of this Agreement. This Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Agreement or any part hereof to be drafted.

12.    **No Effect on Existing Default or Maturity.** Neither the execution and delivery of this Agreement or any other document or instrument required hereunder nor the consummation of the transactions and agreements set forth in this Agreement shall in any manner rescind or cure any existing default under the subject Loan Documents, reinstate the Notes to a current status, constitute an accord and satisfaction or extend the maturity of any of the foregoing notes.

13.    **Expenses.** Borrowers agree to pay all costs, fees and expenses of Lender (including the fees of Lender's counsel) specifically incurred by Lender in connection with the administration and enforcement of this Agreement. All such costs accrued through the date this Agreement is executed shall be paid by Borrowers on that date. Nothing herein shall be construed as a waiver by Lender of its right to collect other attorneys' fees, costs of collection or other expenses which Lender is entitled to collect under the Loan Documents.

14.    **Further Documents.** Obligors each hereby agree to execute any and all further documents and instruments required by Lender and to do all other acts and things necessary to give effect to the terms and provisions of this Agreement.

15.    **Authorization of Agreement.** The execution and delivery of this Agreement has been duly authorized by all necessary corporate or partnership action of Borrowers and Guarantors (as applicable), and the individuals executing this Agreement on behalf of same have been duly authorized and empowered to bind Borrowers and Guarantors by such execution.

16.    **Time is of the Essence.** Time is of the essence with respect to all agreements contained herein.

17.    **Miscellaneous.**

(a)    **Benefit of Agreement.** This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto, their respective successors and assigns. No other person or entity shall be entitled to claim any right or benefit hereunder, including, without limitation, the status of a third-party beneficiary of this Agreement.

**(b)    Delay Not a Waiver.** Neither the failure nor any delay on the part of Lender to exercise any right, power or privilege under this Agreement or under any document executed in connection herewith shall operate as a waiver of such right, power or privilege and any single or partial exercise of any such right, power or privilege shall not preclude any other or further exercise thereof.

**(c)    Integration.** This Agreement, together with the Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings relating to such subject matter. In entering into this Agreement, Borrowers and Guarantors acknowledge that they are relying on no statement, representation, warranty, covenant or agreement of any kind made by the Lender or any employee or agent of the Lender, except for the agreements of Lender set forth herein.

**(d)    Severability.** The provisions of this Agreement are intended to be severable. If any provisions of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Agreement in any jurisdiction.

**(e)    No Joint Venture or Partnership.** Each of Obligors and Lender intend that the relationships created in this Agreement and under the Loan Documents or pursuant to the transactions to be carried out pursuant to this Agreement, be solely that of the Obligor or Lender. Nothing in this Agreement, the transactions to be carried out pursuant to this Agreement or the Loan Documents is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between or among any of Obligors and Lender. Obligors agree and acknowledge that Obligors are in sole possession and control of the Property.

**(f)    Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri, without regard to the choice of law principles of such state.

**(g)    Counterparts; Electronic Signatures.** This Agreement may be executed in any number of counterparts and by different parties to this Agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Any signature delivered by a party by electronic or facsimile transmission shall be deemed to be an original signature hereto. This Agreement shall become effective when all parties have executed a counterpart hereof.

**(h)    Survival.** All representations, warranties, covenants, agreements, undertakings, waivers and releases of Borrowers and Guarantors contained herein shall survive the termination of the Forbearance Period and payment in full of the Loans.

**(i)    Amendment.** No amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the parties hereto.

11

18. **VENUE; JURISDICTION; JURY TRIAL WAIVER.** LENDER, BORROWERS AND GUARANTORS EACH HEREBY IRREVOCABLY:

(a) CONSENT TO THE JURISDICTION OF THE STATE COURTS OF ANY STATE IN WHICH LENDER HAS AN OFFICE;

(b) IF THERE IS A LAWSUIT, BORROWER AGREES UPON LENDER'S REQUEST TO SUBMIT TO THE JURISDICTION OF THE COURTS OF JACKSON COUNTY, STATE OF MISSOURI, AND OTHERWISE TO SUBMIT TO THE JURISDICTION OF ANY STATE HAVING JURISDICTION OF ANY COUNTY IN WHICH LENDER HAS AN OFFICE;

(c) KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THEIR RIGHT TO TRIAL BY JURY IN ANY CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE LOAN DOCUMENTS. EACH PARTY ACKNOWLEDGES AND AGREES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER'S ENTERING INTO THIS AGREEMENT AND LENDER WOULD NOT HAVE ENTERED INTO THIS AGREEMENT WITHOUT THIS WAIVER. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL.

19. **ORAL AGREEMENTS**. The following notice is included in this Agreement pursuant to Section 432.047, R.S.Mo.:

**ORAL OR UNEXECUTED AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMEN TOF A DEBT INCLUDED PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDINGS OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

[Signatures commence on next page]

12

**BORROWERS:**

**MULUNGAS I, LLC**
**f/k/a Mulungas, LLC**

By: _____
    Bradley J. Carlson, Sole Member

**EMPIRICAL PRIME, LLC**
**f/k/a Force Midwest, LLC**

By: _____
    Bradley J. Carlson, Manager

**EP MANUFACTURING, LLC**
**f/k/a Mid Western Automotive, LLC**

By: _____
    Bradley J. Carlson, Sole Member

**MULUNGAS II, LLC**
**f/k/a Force Commercial Building, LLC**

By: _____
    Bradley J. Carlson, Manager

**APEX SPECIALTY VEHICLES, LLC**

By: _____
    Bradley J. Carlson, Manager

**MAG TRUCKS, LLC**

By: _____
    Bradley J. Carlson, Manager

**GUARANTORS:**

**BRADLEY J. CARLSON**

_____

**BRADLEY J. CARLSON, AS SOLE TRUSTEE OF THE BRADLEY JAMES REVOCABLE TRUST DATED FEBRUARY 7, 2017 AND ANY AMENDMENTS THERETO**

_____

**LENDER:**

**ENTERPRISE BANK & TRUST**

By: _____ AVP
Title: Assistant Vice President
Printed Name: Douglas T. Dawson

13

## **RESOLUTION**

On this 30th day of March, 2023, in lieu of a meeting of all of the Members of MULUNGAS I LLC f/k/a Mulungas, LLC, MULUNGAS II LLC, f/k/a Force Commercial Building, LLC, EMPIRICAL PRIME, LLC f/k/a Force Midwest, LLC, APEX SPECIALTY VEHICLES, LLC, MAG TRUCKS, LLC, and EP MANUFACTURING LLC f/k/a Mid Western Automotive, LLC, (collectively, the "Borrowers"), the Borrowers hereby unanimously approve the entry into the Forbearance Agreement by and between Enterprise Bank & Trust and Borrowers dated March 30, 2023.

MULUNGAS I LLC, f/k/a Mulungas, LLC

By: _____
Bradley J. Carlson, Sole Member

MULUNGAS II LLC, f/k/a Force Commercial Building, LLC

By: _____
Bradley J. Carlson, Manager

EMPIRICAL PRIME, LLC f/k/a Force Midwest, LLC

By: _____
Bradley J. Carlson, Manger

APEX SPECIALTY VEHICLES, LLC

By: _____
Bradley J. Carlson, Manager

MAG TRUCKS, LLC

By: _____
Bradley J. Carlson, Manager

EP MANUFACTURING, LLC f/k/a Mid Western Automotive, LLC

By: _____
Bradley J. Carlson, Sole Member

## CERTIFICATION OF TRUST

The undersigned executes this Certification of Trust pursuant to the authority of the Revised Statutes of Missouri, and in so doing represents and certifies as follows:

1. Bradley James Carlson is the Grantor and Sole Trustee of a certain trust created on February 7, 2017, called the Bradley James Carlson Revocable Trust Dated February 7, 2017 (the "Trust") and the Trust currently exists as of the date of this Certification.

2. The name and address of the sole Trustee of the Trust is:

   Bradley James Carlson
   

3. Missouri law governs the validity, construction and administration of the Trust.

4. The Trust is duly created and validly existing Trust created under the laws of the State of Missouri, wherein Bradley James Carlson is the sole Trustee of the Trust.

5. The Trust is revocable and Bradley James Carlson holds the power to revoke the Trust.

6. The Trust's taxpayer identification number is the Grantor, Bradley James Carlson's Social Security Number: REDACTED .

7. The original Trust documents are in full force and effect.

8. The photocopies provided are true and accurate copies of the originals.

9. The undersigned Trustee is the current Trustee of the Trust and this Certification of Trust is being signed by him as he is the only currently acting Trustee of the Trust.

10. The undersigned Trustees represent that the statements contained in this Certification of Trust are true and correct, and there are no provisions in the Trust that limit the powers of the Trustee to sell, convey, pledge, mortgage, lease, manage, operate, control, transfer, title, divide, convert, allot, guarantee, purchase or borrow against trust property, including real and personal property, that would create liability for any third party relying on this document as authorization for Trustee's authority.

11. This Certification of Trust is being delivered to Enterprise Bank & Trust, a Missouri chartered trust company ("Lender") to certify the existence of the Trust and the powers of the Trustee for the purposes of the Lender relying upon and entering into loan transactions with the Trust and the Trustee individually.

1

*Certification of Trust*

12. The Trust has not been revoked, modified, or amended in any manner that would cause the representations contained in this Certification of Trust to be incorrect.

_____
Bradley James Carlson, Sole Trustee

STATE OF _MISSOURI_ )
                    ) ss.
COUNTY OF _Jackson_ )

On this 31st day of March, 2023, before me, the undersigned, a Notary Public, personally appeared Bradley James Carlson, Sole Trustee, or his successors in trust, under the Bradley James Carlson Revocable Trust dated February 7, 2017, and any amendments thereto, to me known to be the same person described in and who executed the foregoing Certification of Trust, and acknowledged that he executed the same as his free and voluntary act and deed as Sole Trustee.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

Notary Public: _C Brandow_
My Appointment Expires: _11/3/23_

C BRANDOW
Notary Public - Notary Seal
Jackson County - State of Missouri
Commission Number 15632659
My Commission Expires Nov 3, 2023

2

*Certification of Trust*

## LIMITED GUARANTY AGREEMENT

THIS LIMITED GUARANTY AGREEMENT (this "Guaranty") is made effective as of May 31, 2023, by MULUNGAS I, LLC f/k/a Mulungas, LLC, a Missouri limited liability company, MULUNGAS II, LLC f/k/a Force Commercial Building, LLC, a Missouri limited liability company, EMPIRICAL PRIME, LLC f/k/a Force Midwest, LLC, a Missouri limited liability company, APEX SPECIALTY VEHICLES, LLC, a Missouri limited liability company, MAG TRUCKS, LLC, a Missouri limited liability company, and EP MANUFACTURING, LLC f/k/a Mid Western Automotive, LLC (collectively, the "Guarantors"), in favor of ENTERPRISE BANK & TRUST, a Missouri chartered trust company (the "Lender"), and its successors and assigns.

## RECITALS

WHEREAS, in accordance with the terms of a Forbearance Agreement dated March 30, 2023, (as amended, modified or supplemented from time to time, the "Forbearance Agreement") between the Lender and the Guarantors, Lender agreed to extend a loan in the amount of $600,000.00 (the "Loan") to Bradley J. Carlson in his individual capacity and in his capacity as sole trustee of the Bradley James Carlson Revocable Trust Dated February 7, 2017, as amended, (the "Borrowers") in order to provide a pay down for certain loans referenced in the Forbearance Agreement;

WHEREAS, the Loan shall be evidenced by a Promissory Note dated of even date herewith in the principal amount of $600,000.00 in favor of the Lender, as the same may from time to time be amended, modified, replaced or supplemented (the "New Note");

WHEREAS, the Loan is secured by the New Deed of Trust, as defined in the Forbearance Agreement;

WHEREAS, this Guaranty, the Forbearance Agreement, the New Note, the New Deed of Trust and any and all other documents executed in connection with the Loan are collectively herein referred to as the "Loan Documents";

WHEREAS, as a condition precedent to making the Loan, the Lender has required, among other things, the execution and delivery of this Guaranty by the Guarantors;

WHEREAS, it is intended that this Guaranty extend to the $100,000 of Employee Retention Credit funds (the "ERC Funds Payment"), to be received by the Guarantors, owing under the Loan Documents, without the need for any notice to the Guarantors and without any need for any supplements or amendments to this Guaranty or any other documentation to be executed by the Guarantors; and

WHEREAS, unless otherwise defined herein, all capitalized terms used herein shall have the meanings assigned to them in the Forbearance Agreement.

*Limited Guaranty Agreement*

## AGREEMENT

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and as a material inducement to the Lender to extend credit to the Borrowers, the Guarantors hereby guarantee to the Lender the prompt and full payment and performance of the payment of the ERC Funds Payment and the other obligations in connection with the Loan as described below in this Guaranty (hereinafter sometimes collectively called the "Obligations"), upon the following terms and conditions:

1.      Guaranty of Payment of the ERC Funds. The Guarantors hereby unconditionally and irrevocably guarantee to the Lender the payment of the ERC Funds Payment (the "Guaranteed Amount") within two (2) days of receipt of the ERC Funds by any one, any more than one, or all of the Guarantors plus interest on the Guaranteed Amount from the date the same is due by the Guarantor hereunder until paid in full at the highest rate of interest charged on any of the Loans as of such due date, together with all costs, expenses and attorneys' fees incurred by Lender.

2.      Primary Liability of the Guarantor. This Guaranty is an absolute, irrevocable and unconditional guaranty of payment and performance. The Guarantors shall be liable for the payment and performance of the Obligations, as set forth in this Guaranty, as a primary obligor. This Guaranty shall be effective as a waiver of, and the Guarantors hereby expressly waive, any and all rights to which the Guarantors may otherwise have been entitled under any suretyship laws in effect from time to time, including any right or privilege, whether existing under statute, at law or in equity, to require the Lender to take prior recourse or proceedings against any collateral, security or person whatsoever. Upon the occurrence of any default under the Loan, the ERC Funds Payment shall be deemed immediately due and payable at the election of the Lender, and the Guarantors shall, on demand and without presentment, protest, any notice whatsoever, pay the amount due thereon to the Lender and it shall not be necessary for the Lender, in order to enforce such payment by any Guarantor, first to institute suit or pursue or exhaust any rights or remedies against the Borrowers or others liable on the Obligations, or to institute suit or pursue or exhaust any rights or remedies against the Borrowers or any other Guarantor or other sureties of the Obligations as contemplated by applicable law or to enforce any rights against any security that shall ever have been given to secure the Obligations, or to join the Borrowers or any others liable for the payment or performance of the Obligations or any part thereof in any action to enforce this Guaranty, or to resort to any other means of obtaining payment or performance of the Obligations.

3.      Representations, Warranties, and Covenants of the Guarantor. The Guarantors hereby represents, warrants, and covenants that (a) the Guarantors will derive substantial benefit, directly or indirectly, from the making of the Loan to the Borrowers and from the making of this Guaranty by the Guarantors; (b) this Guaranty is duly authorized and valid, and is binding upon and enforceable against the Guarantors; (c) the Guarantors are not, and the execution, delivery and performance by the Guarantors of this Guaranty will not cause the Guarantors to be, in violation of or in default with respect to any law or in default (or at risk of acceleration of indebtedness) under any agreement or restriction by which the Guarantors are bound or affected;

*Limited Guaranty Agreement*

(d) except as may have been disclosed to the Lender in writing, there is no litigation pending or, to the knowledge of the Guarantors, threatened before or by any tribunal against or affecting the Guarantors which would materially and adversely affect the financial condition of Guarantors; (e) all financial statements and information heretofore furnished to the Lender by the Guarantors do, and all financial statements and information hereafter furnished to the Lender by the Guarantors will, fully and accurately present the condition (financial or otherwise) of the Guarantors as of their dates and the results of the Guarantors' operations for the periods therein specified, and, since the date of the most recent financial statements of the Guarantors heretofore furnished to the Lender, no material adverse change has occurred in the financial condition of the Guarantors, nor, except as heretofore disclosed in writing to the Lender, has the Guarantors incurred any material liability, direct or indirect, fixed or contingent; (f) after giving effect to this Guaranty, the Guarantors are solvent, are not engaged or about to engage in business or a transaction for which the property of the Guarantors are an unreasonably small capital contribution, and does not intend to incur or believe that it will incur debts that will be beyond its ability to pay as such debts mature; (g) the Lender has no duty at any time to investigate or inform the Guarantors of the financial or business condition or affairs of the Borrowers or any change therein, and the Guarantors will keep fully appraised of the Borrowers' financial and business condition; (h) the Guarantors acknowledge and agree that the Guarantors may be required to pay and perform the Obligations in full without assistance or support from the Borrowers or any other person; and (i) the Guarantors have read and fully understands the provisions contained in the Forbearance Agreement, the Note, the New Deed of Trust, and the other Loan Documents, each of which may be modified, extended, supplemented or extended from time to time as contemplated in the Loan Agreement without notice to or consent from the Guarantors and without affecting the obligations of the Guarantors under this Guaranty. The Guarantors' representations, warranties and covenants are a material inducement to the Lender to enter into the other Loan Documents and shall survive the execution hereof and any bankruptcy, foreclosure, transfer of security or other event affecting the Borrowers, the Guarantors, any other party, or any security for all or any part of the Obligations.

4.      Financial Information. The Guarantors shall furnish or cause to be furnished to the Lender the Guarantors' financial statements as required by the Forbearance Agreement and other financial information as Lender may from time to time reasonably request.

5.      Certain Agreements and Waivers by the Guarantor.

(a)      The Guarantors hereby agree that neither the Lender's rights or remedies nor the Obligations shall be released, diminished, impaired, reduced or affected by any one or more of the following events, actions, facts, or circumstances, and the liability of the Guarantors under this Guaranty shall be absolute and unconditional irrespective of:

(i)      any limitation of liability or recourse in any other Loan Document or arising under any law;

(ii)      any claim or defense that this Guaranty was made without consideration or is not supported by adequate consideration;

(iii)      the taking or accepting of any other security or guaranty for, or

*Limited Guaranty Agreement*

right of recourse with respect to, any or all of the Obligations;

(iv)    whether express or by any operation of law, any full or partial release of the liability of any Guarantors, Borrowers or any other party hereunder or under any of the other Loan Documents;

(v)    the death, insolvency, bankruptcy, disability, dissolution, liquidation, termination, receivership, reorganization, merger, consolidation, change of form, structure or ownership, sale of all assets, or lack of corporate, partnership or other power of the Borrowers or any other party at any time liable for the payment or performance of any or all of the Obligations;

(vi)    either with or without notice to or consent of the Guarantors: any renewal, extension, modification or rearrangement of the terms of any or all of the Obligations and/or any of the Loan Documents, including, without limitation, material alterations of the terms of payment (including changes in maturity date(s), interest rate(s) and amortization) or performance or any other terms thereof, or any waiver, termination, or release of, or consent to departure from, any of the Loan Documents or any other guaranty of any or all of the Obligations, or any adjustment, indulgence, forbearance, or compromise that may be granted from time to time by the Lender to the Borrowers, any Guarantor, and/or any other person at any time liable for the payment or performance of any or all of the Obligations;

(vii)    any neglect, lack of diligence, delay, omission, failure, or refusal of the Lender to take or prosecute (or in taking or prosecuting) any action for the collection or enforcement of any of the Obligations, or to foreclose or take or prosecute any action to foreclose (or in foreclosing or taking or prosecuting any action to foreclose) upon any security therefor, or to exercise (or in exercising) any other right or power with respect to any security therefor, or to take or prosecute (or in taking or prosecuting) any action in connection with any Loan Document, or any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Obligations;

(viii)    any failure of the Lender to notify the Guarantors of any creation, renewal, extension, rearrangement, modification, supplement, subordination, or assignment of the Obligations or any part thereof, or of any Loan Document, or of any release of or change in any security, or of any other action taken or refrained from being taken by the Lender against the Borrowers or any security or other recourse, or of any new agreement between the Lender and the Borrowers, it being understood that the Lender shall not be required to give the Guarantors any notice of any kind under any circumstances with respect to or in connection with the Obligations, any and all rights to notice that the Guarantors may have otherwise had being hereby waived by the Guarantors;

(ix)    any refund by the Lender of any payment made by the Borrowers or any other party liable for the payment or performance of any or all of the

*Limited Guaranty Agreement*

Obligations;

(x) the existence of any claim, set-off, or other right that the Guarantors may at any time have against the Borrowers, the Lender, or any other person, whether or not arising in connection with this Guaranty or any other Loan Document;

(xi) the unenforceability of all or any part of the Obligations against the Borrowers, whether because the Obligations exceed the amount permitted by law or violate any usury law, or because the act of creating the Obligations, or any part thereof, is beyond the scope of powers granted (with respect to each corporate or partnership Guarantor), or because the officers or persons creating same acted in excess of their authority, or because of a lack of validity or enforceability of or defect or deficiency in any of the Loan Documents, or because the Borrowers has any valid defense, claim or offset with respect thereto, or because the Borrowers' obligation ceases to exist by operation of law, or because of any other reason or circumstance, it being agreed that the Guarantors shall remain liable hereunder regardless of whether the Borrowers or any other person be found not liable on the Obligations, or any part thereof, for any reason (and regardless of any joinder of the Borrowers or any other party in any action to obtain payment or performance of any or all of the Obligations);

(xii) any order, ruling or plan of reorganization emanating from proceedings under Title 11 of the United States Code with respect to the Borrowers or any other person, including any extension, reduction, composition, or other alteration of the Obligations, whether or not consented to by the Lender; or

(xiii) any failure to notify the Guarantor of, or obtain the Guarantors' consent to, the making of the Loan or advances thereunder.

(b) In the event that any payment by the Borrowers or any other person to the Lender is held to constitute a preference, fraudulent transfer or other voidable payment under any bankruptcy, insolvency or similar law, or if for any other reason the Lender is required to refund such payment or pay the amount thereof to any other party, such payment by the Borrowers or any other party to the Lender shall not constitute a release of the Guarantors from any liability hereunder, and this Guaranty shall continue to be effective or shall be reinstated (notwithstanding any prior release, surrender or discharge by the Lender of this Guaranty or of the Guarantors), as the case may be, with respect to, and this Guaranty shall apply to, any and all amounts so refunded by the Lender or paid by the Lender to another person (which amounts shall constitute part of the Obligations), and any interest paid by the Lender and any attorneys' fees, costs and expenses paid or incurred by the Lender in connection with any such event. It is the intent of the Guarantors and the Lender that the obligations and liabilities of the Guarantors hereunder are absolute and unconditional under any and all circumstances and that until the Obligations are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of the Guarantors hereunder shall not be

discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a Guarantor.

(c)     If acceleration of the time for payment of any amount payable by the Borrower under the Note or any other Loan Document is stayed or delayed by any law or tribunal, all such amounts shall nonetheless be payable by the Guarantors on demand by the Lender.

6.     <u>WAIVER OF TRIAL BY JURY</u>. THE GUARANTORS HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE GUARANTORS AND THE LENDER MAY BE PARTIES ARISING OUT OF, IN CONNECTION WITH, OR IN ANY WAY PERTAINING TO, THIS GUARANTY AND/OR ANY OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS GUARANTY.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE GUARANTORS, AND THE GUARANTORS HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  THE GUARANTORS FURTHER REPRESENT AND WARRANT THAT THEY HAVE BEEN REPRESENTED IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

7.     **ORAL AGREEMENTS**. The following notice is included in this Agreement pursuant to Section 432.047, R.S.Mo.:

**ORAL OR UNEXECUTED AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMEN TOF A DEBT INCLUDED PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDINGS OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

8.     <u>Attorneys' Fees and Costs of Collection</u>. The Guarantors shall pay on demand all reasonable attorneys' fees and all other costs and expenses incurred by the Lender in the enforcement of or preservation of the Lender's rights under this Guaranty.

9.     <u>Term of Guaranty</u>. This Guaranty shall continue in effect until such time as the

*Limited Guaranty Agreement*

Loan, including all renewals or extensions thereof, has been terminated and the Obligations have been fully and finally paid and performed, except that, and notwithstanding any return of this Guaranty to the Guarantors, this Guaranty shall continue in effect with respect to preferential, fraudulent or other voidable payments or other transfers.

10.    Notices.    Unless specifically provided otherwise, any notice for purposes of this Guaranty shall be given in writing or by e-mail transmission and shall be addressed or delivered to the respective addresses set forth at the end of this Guaranty, or to such other address as may have been previously designated by the intended recipient by notice given in accordance with this Section.  If sent by prepaid, registered or certified mail (return receipt requested), the notice shall be deemed effective when the receipt is signed or when the attempted initial delivery is refused or cannot be made because of a change in address of which the sending party has not been notified; and if transmitted by e-mail or personal delivery, the notice shall be effective when received.  No notice of change of address shall be effective except upon actual receipt.

11.    Cumulative Rights.    The exercise by the Lender of any right or remedy hereunder or under any other Loan Document, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.  The Lender shall have all rights, remedies and recourses afforded to the Lender by reason of this Guaranty or any other Loan Document or by law or equity or otherwise, and the same shall be cumulative and concurrent and are intended to be, and shall be, nonexclusive.  No waiver of any default on the part of the Guarantors or of any breach of any of the provisions of this Guaranty or of any other document shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers granted herein or in any other document shall be construed as a waiver of such rights and powers, and no exercise or enforcement of any rights or powers hereunder or under any other document shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time.  No provision of this Guaranty or any right, remedy or recourse of the Lender with respect hereto, or any default or breach, can be waived, nor can this Guaranty or the Guarantors be released or discharged in any way or to any extent, except specifically in each case by a writing intended for that purpose (and which refers specifically to this Guaranty) executed, and delivered to the Guarantor, by the Lender.

12.    Governing Law.    This Guaranty shall for all purposes be governed by and construed in accordance with the laws of the State of Missouri, and is intended to be performed in accordance with, and only to the extent permitted by, such laws.  All obligations of the Guarantors hereunder are payable and performable at the place or places where the Obligations are payable and performable.

13.    Interpretation.    If this Guaranty is signed by more than one person as the "Guarantor", then the term "Guarantor" as used in this Guaranty shall refer to all such persons jointly and severally, and all promises, agreements, covenants, waivers, consents, representations, warranties and other provisions in this Agreement are made by and shall be binding upon each and every such undersigned person, jointly and severally.  The term "Lender" shall be deemed to include any subsequent holder(s) of the Note.

14.    Counterparts.    This Guaranty may be executed in any number of counterparts and by different parties to this Guaranty on separate counterparts, each of which, when so executed,

*Limited Guaranty Agreement*

shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Any signature delivered by a party by electronic or facsimile transmission shall be deemed to be an original signature hereto.

15. <u>Miscellaneous</u>. This Guaranty embodies the entire agreement between the Lender and the Guarantors with respect to the guaranty by the Guarantors of the Obligations. This Guaranty supersedes all prior agreements and understandings, if any, with respect to guaranty by the Guarantor of the Obligations. This Guaranty does not supersede, replace or in any manner invalidate any other guaranty delivered by Guarantors to the Lender, which guaranty or guaranties, and any renewals, substitutions or replacements thereof, shall remain in full force and effect. This Guaranty may not be modified, amended or superseded except in a writing signed by the Lender and the Guarantors referencing this Guaranty Agreement by its date and specifically identifying the portions hereof that are to be modified, amended or superseded. This Guaranty is binding not only on the Guarantors, but also on the Guarantors' heirs, personal representatives, successors and assigns. If any provision of this Guaranty or the application thereof to any person or circumstance shall, for any reason and to any extent, be declared to be invalid or unenforceable, neither the remaining provisions of this Guaranty nor the application of such provision to any other person or circumstance shall be affected thereby, and the remaining provisions of this Guaranty, or the applicability of such provision to other persons or circumstances, as applicable, shall remain in effect and be enforceable to the maximum extent permitted by applicable law.

[Signature appears on following page]

*Limited Guaranty Agreement*

IN WITNESS WHEREOF, the Guarantors duly executed and delivered this Limited Guaranty Agreement as of the date first written above.

**GUARANTORS:**

**MULUNGAS I, LLC**
**f/k/a Mulungas, LLC**

By:_____
    Bradley J. Carlson, Sole Member

**MULUNGAS II, LLC**
**f/k/a Force Commercial Building, LLC**

By:_____
    Bradley J. Carlson, Manager

**EMPIRICAL PRIME, LLC**
**f/k/a Force Midwest, LLC**

By:_____
    Bradley J. Carlson, Manager

**APEX SPECIALTY VEHICLES, LLC**

By:_____
    Bradley J. Carlson, Manager

**EP MANUFACTURING, LLC**
**f/k/a Mid Western Automotive, LLC**

By:_____
    Bradley J. Carlson, Sole Member

**MAG TRUCKS, LLC**

By:_____
    Bradley J. Carlson, Manager

*Limited Guaranty Agreement*